## Gregg v. Starks, et al.

(Decided October 1, 1920.)

### Jefferson Circuit Court.

1. Railroads—Contracts Between Carrier and Conductors as to Seniority Rights.—Provisions of contract between carrier and its conductors with reference to seniority rights construed to mean that a senior freight conductor who has qualified for passenger service cannot displace junior occupant of a regular passenger train but must await a vacancy.

2. Railroads—Dispute Between Carrier and Employees—Adjustment Board.—An adjustment board, organized under Federal control act, has no authority of a dispute between a carrier and its employees, which arose after the Transportation Act of 1920 became effective.

3. Railroads—Contract With Conductor.—The mere fact that a contract was originally negotiated between a railroad company and an organized body of its conductors does not deprive non-member conductors of its benefits when it is treated and recognized

by the company and such non-member conductors as the contract between them.

4.  Railroads—Contract With Conductors—Displacement of Conductor —Injunction.—Where a conductor is about to be displaced from a passenger run to which by contract he is entitled, the fact that under the contract he may claim another run for which the pay is the same, does not defeat his right to injunctive relief, but proves rather that an action at law for damages for such a breach of his contract would be a wholly inadequate remedy.

5.  Railroads—Contract Rights of Conductors — Jurisdiction. — The Transportation Act of 1920 does not disturb the jurisdiction of state courts of a controversy over contract rights between two conductors and a railroad company, all parties being residents of the state and no question of interstate commerce being involved.

DAVID R. CASTLEMAN for plaintiff.

ARTHUR B. BENSINGER and JOHN VERSER CONNER for defendant, William Pennybacker.

GROVER SALES and BRUCE & BULLITT for defendants, L. & N. R. R. and B. M. Starks.

MOTION FOR AN INJUNCTION BEFORE JUDGE E. S. CLARKE —Motion sustained.

By this action, pending in the Jefferson circuit court, plaintiff seeks to enjoin the defendants, Louisville & Nashville Railroad Company and its general manager, B. M. Starks, from displacing him as conductor on its passenger trains between Louisville and Bloomfield, Kentucky, known as trains Nos. 55 and 56, in favor of defendant, William Pennybacker, and the latter from accepting that run.

A motion for a temporary injunction was refused by the judge of the lower court before whom it was made and plaintiff has renewed that motion before me, in the consideration and determination of which, I have had the assistance of Chief Justice Carroll, Judges Thomas and Quin, who concur in this opinion.

Plaintiff's right to this particular run is claimed under two provisions of what he contends is the contract of the defendant railroad company with all of its conductors.

Pennybacker, who only of the defendants has filed answer or brief on the motion, contends: (1) That under the contract he, rather than plaintiff, is entitled to the run in controversy; (2) that a decision to that effect by

the Railway Board of Adjustment, No. 1, organized under transportation act of 1920, is conclusive of his right thereto; (3) that plaintiff is not entitled to the benefits of the contract, and (4) that plaintiff will not suffer irreparable injury; has an adequate remedy at law and is not entitled to an injunction.

The facts, about which there is no dispute, are: Gregg has been in the employment of the railroad company for twenty-six years and for the last twenty years as a passenger conductor. He holds now and has held for the last two years the regular passenger run in controversy. Pennybacker has been employed by the company for thirty-one years, the past twenty-five years as a regular freight conductor; and by extra passenger service had qualified for a regular passenger run before this controversy arose.

On February 10, 1920, the railroad company, as required by the contract in question, posted a bulletin that, beginning February 20th, a regular work train would be established; and Pennybacker being the senior applicant was assigned to it.

This train was annulled February 28, 1920, and on March 6th Pennybacker filed application with the company for Gregg's run which the company declined to grant. On April 24th, 1920, an agreed statement of facts, the same in substance as above stated, was entered into between Pennybacker and the railroad company and by their mutual agreement to which Gregg was not a party, the right of Pennybacker under the contract to the run was referred to Railway Board of Adjustment No. 1, organized under the federal control act of 1918. Upon submission to that board, as shown by a copy of the decision filed with defendant's answer, it was held, without assigning the reasons therefor, that defendant was entitled to the run. The railroad company then gave notice to Gregg that Pennybacker would be given the run and this action followed. Gregg, if ousted by Pennybacker, can assert his seniority to the passenger run held by conductor Vanarsdale between Louisville and Lexington, which pays the same as the run in controversy.

For convenience we will consider defendant's contentions in the order in which we have stated them, *supra*.

1. The two provisions of the contract in controversy, the fourth paragraph of section (b) and section (j), are found in article 26 headed "Seniority and Filling Vacancies" and read: "Conductors displaced on account of

reduction of crews, or other causes, will be permitted to exercise their seniority rights to any run held by a junior conductor, section (j) to govern passenger service.''

(j)   ''Conductors will be required to participate in extra passenger work before being permitted to exercise their seniority rights to permanent passenger vacancies.''

Except for the reference therein to (j), section (b) would unquestionably sustain defendant's contention because otherwise by its unambiguous terms it gives any conductor, freight or passenger, a seniority right to any run in either freight or passenger service ''held by a junior conductor.''   But this entire section very clearly was not intended to mean that because it expressly provides that section (j) shall govern passenger service. The latter section is therefore the important factor in determining this controversy over a passenger run.   For Pennybacker, it is insisted that section (j) means only that a freight conductor must qualify for passenger service by extra work in that department before he may exercise his right of seniority to a passenger run; that when so qualified, he may exercise that right to any run in the passenger service held by a junior occupant regardless of whether there is a vacancy or not.   It is contended for Gregg that such a construction of section (j) entirely ignores and disregards the last three  words thereof, namely, ''permanent passenger vacancies.''  He contends that these words must be considered and that when considered, the section as a whole can only mean that the right of a senior freight conductor to a regular passenger run is confined to permanent passenger vacanies and cannot be exercised where there is no vacancy as is the case here.   We must assume that these words were intended to have some force and we are unable to attribute to them any meaning whatever except that given them by plaintiff; nor does counsel for defendant suggest anything else they could mean, but insists they have no qualifying effect whatever.  To this we cannot agree, but must hold, that by its terms a freight conductor, qualified for passenger service, can not enter that service by displacing a junior occupant of a regular passenger run but must await a vacancy when by reason of his seniority he will be given the run in preference to junior passenger conductors applying therefor.

2.   The Railway Board of Adjustment No. 1, as clearly appears from the record and as is admitted by counsel for defendant, was organized under the federal con-

trol act of 1918 and not pursuant to the provisions of the transportation act of 1920. By section 200 of the latter act it is provided that federal control of the railroads shall terminate at 12:01 A. M., March 1, 1920; and that thereafter the President shall not have or exercise any of the powers, with certain exceptions not pertinent here, conferred upon him by the federal control act. Section 202 provides that "the President shall, as soon as practicable after the termination of federal control, adjust, settle, liquidate, and wind up all matters, including compensation, and all questions and disputes of whatsoever nature, arising out of or incident to federal control."

Doubtless, under the latter section, Railway Board of Adjustment No. 1 is continued in existence and has authority to dispose of such disputes as are referable to it, which arose during federal control between the director general of railroads and employees. But this dispute arose between the railroad company and two of its employees on March 6, 1920, when Pennybacker applied for Gregg's run, after the termination of federal control.

Section 302 of the transportation act provides for the establishment, by agreement between carriers and their employees, of boards of adjustment similar to those organized during federal control by agreement between the director general of railroads and employees. Section 304 provides for a railroad labor board which by section 307, is authorized to hear and determine such disputes as under 302 and 303 would go to adjustment boards until such time as the latter are established. Clearly then, we think, Railway Board of Adjustment No. 1, to which this dispute was referred, was without authority to hear it and the question involved was not referred to or decided by a tribunal provided for or established under the transportation act. Moreover, section 309 of that act provides that "Any party to any dispute to be considered by an adjustment board or by the labor board shall be entitled to a hearing either in person or by counsel." Such a hearing, plaintiff did not have even before Railway Board of Adjustment No. 1, since he was not represented either in person or by counsel nor given an opportunity to be so represented. Hence the decision of Railway Board of Adjustment No. 1 cannot be binding upon plaintiff, who was not a party to the agreement under which the question was submitted to it, even as a common law award as is urged by counsel for defendant. Neither can it be accepted by us as an authoritative con-

struction of the contract. It is wholly without legal effect.

3. It is insisted that plaintiff is not entitled to the benefits of the contract, simply because, as shown by parol evidence, it was negotiated between the railroad company and the Order of Railway Conductors of which Pennybacker is and Gregg is not a member. There is nothing in the contract to indicate this or that it applies only to such of the conductors as are members of the order. It is not signed by the Order of Railway Conductors or by anyone for it or any of the conductors; neither is the name of the railroad company subscribed thereto but it is signed by two of its officers, and upon its face purports to be an agreement between United States Railroad Administration (Louisville & Nashville Railroad Company) and all of its conductors.

Mr. Turner, assistant superintendent of transportation for the company, testified that Gregg was an employee of the company, working under the same kind of contract as the one filed by him, which is not denied by any witness, and the mere fact that the contract was negotiated between the railroad company and an organization representing a part of its conductors cannot exclude other conductors not members of the organization from its benefits, when the non-member conductors and the railroad company recognized and treated it as the contract under which the services of such conductors were rendered and accepted.

4. It is finally insisted that plaintiff will suffer no damages since if displaced by Pennybacker he may exercise his right of seniority over conductor Vanarsdale, the junior occupant of a regular passenger run between Louisville and Lexington, for which the pay is the same as the Bloomfield run; and that even if he should suffer damage he has an adequate remedy at law and is not entitled to injunctive relief.

If we are correct in our construction of the contract, that Pennybacker has no right to take the Bloomfield run away from Gregg, then, the fact that such wrongful displacement will subject Gregg to no money damage, seems conclusive to us that his remedy at law for damages against the railroad company for a breach of his contract of employment is altogether inadequate for the protection of his contract rights. The very fact that the contract itself provides rights of seniority where the pay is the same is evidence that such rights were considered by the contracting parties as of sufficient value to demand

protection. It certainly is clear that if defendant can displace Gregg, even if the latter in turn displaces Vanarsdale, his tenure of the latter's run will be of but short duration since, as appears from an exhibit filed by defendant, that is the only passenger run held by a junior to Gregg and there are twelve freight conductors who are his seniors and by whom he can be displaced should they desire to do so by simply qualifying as has Pennybacker for passenger service by participating in extra work in that department. Even conceding that the freight service is as remunerative as the passenger, it certainly must be apparent to anyone that to be relegated to freight service after twenty years of passenger service would inflict irreparable injury if done in violation of a contract right, and that such injury could not be estimated in damages. Recognizing fully the general rules under which injunction is denied to enforce a contract for personal services or where the applicant has an adequate remedy at law or where he will not suffer irreparable injury, we are nevertheless clearly of the opinion that none of these authorities are applicable here and that the facts of this case are so extraordinary as to require injunctive relief if plaintiff is to have any protection whatever in his contract rights. Such being the case, we need not review the several authorities, setting forth and applying the general rule, cited by counsel for defendant in brief, but need cite only two Kentucky cases which we think fully warrant the granting of the temporary injunction under the extraordinary facts of this case. Those cases are Friedberg, Incorporated v. McClary, etc., 173 Ky. 579; Turner v. Hampton, 30 Ky. Law Rep. 179.

Although the question is not directly made, it is intimated throughout the argument for defendant, Pennybacker, that the boards provided for in the transportation act have exclusive jurisdiction to hear and determine such disputes as this between carriers and their employees, and that the state courts are therefore without jurisdiction in such matters.

Unquestionably, Congress under its plenary power to regulate interstate commerce might provide tribunals with exclusive jurisdiction to hear and decide all disputes between carriers and their employees arising out of or that might seriously affect interstate commerce, but this is we think the limit of the power and also of the intention of Congress to regulate such disputes by the transportation act.

In the instant case, the carrier is hardly more than a nominal party and is making no defense. The real dispute is a private one between Pennybacker and Gregg, both of whom are residents of this state and, so far as appears from the record, there is no question of interstate commerce involved.

We do not believe that Congress either had the power or the intention to provide for the trial of such a controversy by the boards provided by the transportation act. There is no provision under which a single individual can apply to such boards for the protection of his contract rights with the company or his fellow employees; and Gregg unless he could get 99 other employees to join with him could not take his case before those boards, and would be without a forum unless the state courts are open to him.

We must, therefore, assume that our jurisdiction of this controversy has not been disturbed by that act.

For which reasons in our judgment the motion should be sustained and it is so ordered.