CHAMBERS *et al. v.* DAVIS *et al.*

[91 South. 346. In Banc. No. 22034.]

SPECIFIC PERFORMANCE. *Railroad's contract with employees to assign them to trains in accordance with length of service not specifically enforceable.*

A court of equity will not decree the specific performance of a contract of a railroad company with its employees to assign them to its trains in accordance with the length of time they have been in its service, giving the preference always to the employee who has been longest in service.

ANDERSON and ETHRIDGE, JJ., dissenting.

APPEAL from chancery court of Alcorn county.

HON. A. J. McINTYRE, Chancellor.

Suit by C. S. Davis and others against P. J. Chambers and others. Decree for plaintiffs and defendants appeal. Reversed and bill dismissed.

*W. D. Conn* and *J. W. Conn,* for appellant.

*W. C. Sweat,* for appellees.

SMITH, C. J., delivered the opinion of the court.

This is a suit in equity in which the appellees obtained an injunction enjoining the Mobile & Ohio Railroad Company to replace them as brakemen on one of the regular trains from which they had been displaced by the company in favor of the appellants, Davis, Guin and Robertson, and enjoining the said appellants from continuing to assist in running that train. The appellees have been employed by the railroad company for several years and the said appellants have just entered its service. The complaint of the appellees, in substance, is that under the company's contract with its employees it must assign its employees to its trains in accordance with the length of time they have been in its service; that is to say, it must always prefer an employee over another who has been in its service a shorter time than the former; that in violation of this contract the company has displaced the appellees from one of its regular trains in favor of the said appellants, resulting in the appellees being transferred from the list of regular to that of extra brakemen, because of which they are given runs only when a regular brakeman fails to take his run.

The company alleges that it has no real interest in the controversy, that it is in fact a controversy between its employees, and that it is willing to abide by and to comply with the court's decree.

The disposition we have decided to make of the case will render it unnecessary for us to set out the reasons assigned by the said appellants in support of their claim to the right to be assigned to the train in question.

The contract which the appellees here seek to have specifically performed is one for personal services, and it is well settled that equity will not decree the specific performance of such a contract. *Sims* v. *Lumber Co.,* 96 Miss. 449, 51 So. 459. Counsel for the appellees admit that such is the general rule, and that a court of equity would not interfere should the company discharge the appellees. Their contention is that the rule should not apply here for the reason that the company has not and does not intend to discharge the appellees, and is willing to accord them their claimed right of seniority if the court should decree that they are entitled thereto. But this simply amounts to a request of the court to relieve the railroad company of an embarrassing situation by arbitrating a dispute between its employees as to their relative rights under their contract with the company, and it would seem to be unnecessary for us to say that such is not a proper function of the courts.

We have not overlooked the case of *Gregg* v. *Starks,* 188 Ky. 834, 224 S. W. 459, cited by, and which supports the contention of, the appellees, but that case is not in accord with the rule governing controversies of the character of the one here in question, and, moreover, was not decided by a court of last resort, but by one of the judges of such a court on a motion for a temporary injunction.

*Reversed, and bill dismissed.*


ANDERSON, J. (dissenting).

I am unable to agree with the majority opinion in this case. I think it takes too narrow a view of the question involved. In my judgment the case cited as sustaining the majority opinion, *Sims* v. *Lumber Co.,* 96 Miss. 449, 51 So. 459, falls far short of doing so. In that case the court

simply reaffirmed the well-established principle that a court of equity would not decree specific performance of a contract for personal services. As it appears to me this is a very different case from that. There is a much larger question involved here. The bill in this case alleged and the chancellor so found from the evidence that the appellees, complainants in the court below, had a contract with the Mobile & Ohio Railroad Company regulating their seniority as trainmen of that company in the operation of its freight trains between Corinth and Birmingham; that said contract of employment was made by said railroad company with appellees as a group and not individually; and secured to them valuable rights which affected materially the amount of compensation they received for their services. The said railroad company and another group of its trainmen on its said line between Corinth and Birmingham were made defendants (appellants here). The bill alleged, and the trial court so found, that the railroad company, in violation of its said contract regulating the rank and compensation of appellees, had promoted the said group of employees (appellants) to the rank to which appellees were entitled under their said contract, and sought to have the court so interpret said contract, and enjoin the said railroad company from violating same, and appellants, the other group of employees, from interfering with their said rank and rights of seniority so secured to appellees.

The railroad company answered and in substance said that it was willing to carry out its contract with appellees, and, if its conduct complained of in the judgment of the court amounted to a breach of such contract, it would abide such decree as the court might make in the premises. It will be seen from what has been said that this is not an ordinary case of the character of *Sims* v. *Lumber Company, supra,* of an employee against an employer, or the latter against the former, seeking specific performance of a contract for personal services. It is not a case where the employer has discharged his employee in violation of a con-

tract for personal services. Here we have a railroad company with one group of employees on one hand, and another group on the other hand, and in employing the members of both groups the railroad company has dealt with them collectively, so far as their grade and seniority rights are concerned, and possibly with respect to other rights. The railroad company has discharged the members of neither group. One group goes into court by their bill in equity and says the railroad company has violated its contract with its members in promoting the members of the other group to the rank to which the former were entitled by their contract, and seeking the court's interpretation of the contract, and if such interpretation be favorable a decree enjoining the railroad company and the other group of the employees from interfering with their rights. The railroad company admits in its answer the making of the contract set out in the bill and its willingness to carry it out as interpreted by the court, but avers that there is a difference between its two contending groups of employees as to the meaning of the contract, and states that it submits this question to the court for decision, and will abide its decree. Isn't such contract lawful? Isn't it about a lawful subject-matter? I see no reason otherwise. And why should a court of equity close its doors to the enforcement of such contracts between an employer and employees? I am unable to see the reason why they should. As it appears to me, a wise public policy would require the courts to entertain such suits. It would have a tendency, to say the least of it, to avoid strikes growing out of controversies between large employers of labor and their employees. If both employer and employees in such cases understood that the courts were open to redress their grievances, and were ready and willing to pass just judgment on the rights of the respective parties, it might result in great good to the country. The courts ought to keep pace with the progress and advancement of the country. Old principles should be extended and applied to new conditions; and, if necessary to the ends of jus-

tice, new principles should be developed and declared by the courts. Since under modern conditions employers and employees (especially large employers of labor and their employees) are dealing with each other collectively as to many of the important terms of employment, why should not the courts deal with them in the same manner? Sooner or later it will be done. *Gregg* v. *Stark,* 188 Ky. 834, 224 S. W. 459, is directly in point, and I know of no authority to the contrary; and, although that was not a decision of the court of appeals of Kentucky,- as stated in the majority opinion, it was concurred in by a majority of the members of the court, and is entitled to such weight as its reasoning carries.

ETHRIDGE, J., joins in this dissent.