## FINE et al. v. PRATT.
### No. 2112.

Court of Civil Appeals of Texas. Eastland.
April 4, 1941.

Rehearing Denied May 2, 1941.

Turner, Seaberry & Springer, of Eastland, for appellants.

L. H. Flewellen, of Ranger, for appellee.

FUNDERBURK, Justice.

The Wichita Falls, Ranger & Fort Worth Railroad Company (WFR & Ft. W RR Co) was about September 1, 1927, consolidated with, taken over or absorbed by, Wichita Falls & Southern Railroad Company (WF & S. RR Co.). The railroad of the former may be referred to as the Southern Division and the railroad of the latter as the Northern Division, respectively, as thereafter constituting the Wichita Falls & Southern Railroad. J. E. Pratt was at said time a locomotive engineer for said WFR & Ft. W. RR Co., doing work as an extra. On or about November 2, 1928, a "Memorandum", also designated as "a Tentative Agreement", was signed by J. Q. Aycock, T. J. Durham and A. Johnson" and "Accepted by Wichita Falls & Southern Railroad (s) L. M. Bassett, VP & GM." It appears from the document that the "tentative agreement" was reached as therein stated "at a conference in Brother Bassett's office today with Brother T. J. Durham, General Chairman, Wichita Falls & Southern, Brother J. Q. Aycock, General Chairman Wichita Falls, Ranger & Ft. Worth, Brother E. H. Kruse, Asst. Grand Chief Engineer and Brother T. J. Bassett, 1st Asst. Grand Chief Engineer, present", etc. The "Tentative Agreement" purported to provide a settlement of a dispute existing between these lines growing out of the absorption of the Wichita Falls, Ranger & Fort Worth by the Wichita Falls & South-

ern Railroad, "which provided for the merging of the seniority lists of the engineers on these properties practically on the basis of two engineers on the Wichita Falls & Southern to one engineer on the Wichita Falls, Ranger & Ft. Worth, creating a consolidated list as follows", etc. The list which followed comprised twenty names, numbered from 1 to 20, inclusive. Number 15 was J. E. Pratt. The agreement purported to settle preference rights of the listed engineers. As relating particularly to engineers of the Wichita Falls, Ranger & Fort Worth Railroad, the agreement provided as follows: "It is further understood and agreed that the three oldest engineers now in service on the original Wichita Falls, Ranger & Ft. Worth territory will always have preference to three regular runs, or assignments, operating over that original territory, including blanket runs operating over the territory of the original Wichita Falls, Ranger & Ft. Worth Railroad and a portion of the Wichita Falls & Southern. It is also understood and agreed that the next oldest original Wichita Falls, Ranger & Ft. Worth engineer now in the service will have the preference of the extra work on that original territory, including the extra work on the regular runs or assignments above referred to, but not in the filling of a permanent vacancy. If there should not be sufficient extra work to enable this engineer to earn a reasonable salary, the extra list will be abolished and the oldest demoted Wichita Falls, Ranger & Ft. Worth engineer will be used for such extra work."

On January 17, 1939, said J. E. Pratt brought this suit, apparently naming as sole defendants said Wichita Falls & Southern Railroad Company and Grand International Brotherhood of Locomotive Engineers, the latter an unincorporated association, and hereinafter referred to as the Association.

By Plaintiff's First Amended Original Petition (trial pleading), sixteen (16) engineers were impleaded as additional defendants, the only allegations referring exclusively to them being that they "are made parties to this suit for the reason they have heretofore, by proper order of this court, entered herein on March 23, 1939, been held to be necessary parties hereto and also, in order that their rights as such engineers aforesaid, may be protected and adjudicated by the same judgment to be entered herein."

Concerning the nature of the case as disclosed by plaintiff's pleadings, it is deemed sufficient here to say only that plaintiff asserted seniority rights existing from prior to the alleged merger of said Railroads and claimed to be legally unaffected by said "Tentative Agreement", which latter for stated reasons was asserted to be void and without effect upon the rights of the Plaintiff. The only rights asserted, or injuries sought to be redressed, not dependent upon the invalidity (as alleged) of said "Tentative Agreement" were as follows:

"In this connection, plaintiff alleges that he is entitled to preference of the extra work on said Southern Division, even under the terms of said so-called Tentative Agreement as the 'extra list' therein referred to has been abolished since the year 1929 * * * in the event said so-called tentative agreement is valid and binding on this plaintiff, which he does not admit, but denies, the 'extra list' referred to therein has been abolished since 1929 and therefore even under said agreement, if the same is binding, the oldest demoted Wichita Falls, Ranger & Ft. Worth engineer, who is now the plaintiff herein, should be used for such extra work referred to at the end of the middle paragraph thereof over such combined list on said agreement insofar as said Southern Division is concerned. In other words, since said 'extra list' referred to in said agreement has been abolished since 1929 the combined list on said so-called tentative agreement, if same is binding, must yield to the seniority rights of the oldest engineer in point of service on said Southern Division concerning extra work therein.

"This plaintiff also alleges that under the terms of said so-called tentative agreement in the event same is valid and binding, which plaintiff does not admit, but denies, he is the oldest Wichita Falls, Ranger & Ft, Worth engineer in the service next to J. H. Miller and J. Q. Aycock aforesaid, and is therefore entitled to the preference of the extra work on said Southern Division, including the extra work on the regular runs or assignments therein referred to in the middle paragraph thereof."

Plaintiff alleged that he had formerly been a member of defendant, Grand International Brotherhood of Locomotive Engineers, but he had not been a member since January 1, 1927. Based upon the alleged invalidity of the "Tentative Agreement", plaintiff prayed for certain injunctive re-

lief and "in the event that said so-called Tentative Agreement aforesaid upon final hearing hereof is decreed to be valid and binding by this Honorable Court, this plaintiff prays alternatively, and only in such event, that he have judgment of this Honorable Court permanently enjoining the two defendants [said original defendants] herein and their officers, agents, representatives, and employees, from further violating the seniority rights of this Plaintiff under said so-called Tentative Agreement, and for all costs of suit and for such other and further relief, special and general, in law and in equity, to which he might be justly entitled as against all the defendants herein."

The issues being duly joined and trial by jury waived, the court heard the case, and by the judgment provided, in part, that "said agreement dated November 2, 1928, be and the same is hereby declared to be legal and binding upon all parties therein, and upon all parties to this suit, and insofar as plaintiff is seeking to set aside said agreement it is decreed that plaintiff take nothing." This part of the judgment is unchallenged by either the appellants or the appellee.

Preliminary to another provision of the judgment it quotes from the Tentative Agreement dated November 2, 1928 as follows: "It is also understood and agreed that the next oldest original Wichita Falls, Ranger and Fort Worth engineer now in the service will have the preference of the extra work on that original territory, including the extra work on the regular runs or assignments above referred to, but not in the filling of a permanent vacancy. If there should not be sufficient extra work to enable this engineer to earn a reasonable salary, the extra list will be abolished, and the oldest demoted Wichita Falls, Ranger and Fort Worth engineer will be used for such extra work."

With respect to the provision just quoted the judgment declares as follows: "It is further ordered, adjudged and decreed by the Court that the above quoted provision contained in said agreement dated November 2, 1928, be and the same is hereby construed to mean that the plaintiff, J. E. Pratt, is entitled to the extra work as therein specified on said Southern Division, as aforesaid, of said Wichita Falls & Southern Railroad Company, as long as he is the oldest, demoted engineer thereon; and all parties defendant herein, their representatives, agents, servants and employees, are directed to observe this judgment and said contract as herein construed."

All other relief to the plaintiff was expressly denied. The defendant, Wichita Falls & Southern Railroad Company, was dismissed. Only J. H. Fine and eleven others of the sixteen individual defendants have appealed. Plaintiff J. E. Pratt is the sole appellee.

Appellants' first proposition, being like all the others, stated in few words, is in full as follows: "The trial court having no jurisdiction to interfere with the internal affairs of the Brotherhood or its agreements in the absence of fraud, oppression or bad faith, which was not shown, the judgment below seeking to interpret and enforce such agreement was null and void."

This proposition seems to us insufficient, in itself, to raise any question that would be at all decisive. Appellee having alleged that he was not a member of the Brotherhood and had not been a member since January 1, 1927, the effect of such allegations was to show that he had no rights existing solely from the status of a member. He would have no right to complain of what the Brotherhood did concerning its internal affairs or its agreements, even if fraud, oppression or bad faith were involved, unless same constituted a tort committed against him, or the violation of some right existing by virtue of a contract to which he was a party; or which was made for his benefit. An essential of appellee's cause of action, if any, was the existence of rights of seniority in himself. To be the subject of adjudication by the courts, it is necessary that such rights, if they exist, be legal rights. Legal rights, existing in a government of laws, may be roughly classified as natural rights; rights existing as the result of contracts, and rights created, or recognized, by law. Seniority rights as applicable to trainmen have been defined to mean "that a man shall be entitled to preference in matter of choice of and right to work in his occupation in accordance with length of time he has been employed." 38 Words and Phrases, Permanent Edition, p. 594. See also definition in George T. Ross Lodge, etc., v. Brotherhood of R. T., 191 Minn. 373, 254 N.W. 590.

This question here suggests itself: Under the above classification of rights in which class, if any, is the right of seniority herein asserted? It could hardly be contended, we think, that it is a *natural right* (called in the Declaration of Independence

an *unalienable right*). It is not a right of that classification, a violation of which constitutes a tort. We entertain no doubt that such right, if a legal right, exists only as a creature of contract, either by express provision or by implied incorporation therein, of a well recognized custom; such right, in any·event, being a contract right.

Appellants' second proposition is as follows: "Seniority rights asserted by the Plaintiff, not being such property rights as can be enforced by injunction or specific performance, the judgment below awarding seniority by specific performance was null and void." Without undertaking now to express or imply any opinion as to how seniority rights, if they exist, may properly be enforced, the answer to this proposition is, it seems to us, that no good reason is apparent why, if seniority rights do in fact exist as the result of a contract to which the Appellee was a party, or which contract was made for his benefit, such rights may not be enforced in the courts by application of the remedies usually employed in the enforcement of other legal rights. It may be true that such rights are not property rights in the more usual sense of the term; but there would appear to be no such difference in principle as to require a different classification. Our Bill of Rights provides that "every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Vernon's Ann.St.Const. Art. 1, sec. 13. A right such as that under consideration which quite evidently may affect so materially the ability of one to make a livelihood, or which may involve the difference between gainful employment and unemployment, would certainly, it seems to us, be entitled to protection by the courts. See Grand International B. of L. E. v. Mills, 43 Ariz. 379, 31 P.2d 971; Gregg v. Starks et al., 188 Ky. 834, 224 S.W. 459.

In fact, this question would, we think, be concluded by the fact alone that the right is a right existing by contract.

Appellants' third and fourth propositions are as follows:

"The court erred in decreeing specific performance when the only relief prayed for by plaintiff was an injunction.

"Since the work to be performed by plaintiff as an engineer, under the agreement of November 2, 1928, was his personal service, the court erred in decreeing specific performance of the agreement."

These propositions, if supported by the record, must, we think, be sustained. They are, however, not supported by the record, particularly upon the point that the only relief prayed for was an injunction and the remedy of specific performance was not available because the matter to be performed was personal service. Injunction was the relief specifically prayed for, but in addition thereto, plaintiff prayed "for such other and further relief, special and general, in law and in equity to which he might be justly entitled as against all the defendants herein." The judgment, insofar as it purports to be one in favor of the appellee, seems to lend itself to a construction which would make it but an advisory opinion of the court, or declaratory judgment. We know of no authority in this State for such a judgment. But, if it be construed to be such, no effect would be'given to the succeeding words "all parties defendant herein, their representatives, agents, servants and employees are *directed to observe this judgment and said contract as herein construed.*" (Italics ours) Upon the alternative claim of plaintiff, the judgment awarded practically all the relief even specifically prayed for. Its only omission was in failing to order the issuance of a writ of injunction. We are not sure that the express directions of the judgment may not at least in the absence of objection, be sufficient.

Besides, assuming the sufficiency of the pleadings and evidence, there would appear to be no obstacle to the power of the court to award specific performance of the contract, if any, under the prayer for general relief. The right of seniority as hereinbefore defined is not inconsistent with the right of an employer to discharge his employee. A right of seniority, as we think, exists upon the assumption of a continuing employment. It is superimposed upon the status of employer and employee. Hence, the rule that such remedy is not available to enforce the continuance of an employment involving the performance of personal ·service would seem to be not applicable.

Appellants' fifth proposition is that: "Since plaintiff failed to show that he had no adequate remedy at law for a breach of the agreement dated November 2, 1928, the court erred in decreeing specific performance thereof." The appellee did not allege that the right of seniority sought by him to be enforced accrued to him by virtue of

said agreement. That fact may render further consideration of this proposition unnecessary. However, we think a question of the existence, or not, of an adequate remedy at law may be a question of fact as contradistinguished from a conclusion of law. Whether a party has any remedy at all, or not, may be a question of law and would be, of course, upon undisputed facts; but when the question is one of the *adequacy* of a remedy that, we think, involves an issue of fact, and at least, in the absence of special exception, a general allegation of the nonexistence of an adequate remedy at law, would be sufficient, as a matter of pleading.

Appellants' sixth proposition is: "The duly constituted authorities of the Brotherhood having interpreted the agreement of November 2, 1928, so as to exclude plaintiff from performing extra work as contended for, and no fraud or oppression having been shown, the court was without power to interpret the agreement differently and to order specific performance thereof." To this it is deemed sufficient answer to say that plaintiff laid no basis in his pleadings for claiming any rights under the said agreement, nor were any facts alleged sufficient to show that said agreement was made for his benefit.

■ Appellants' seventh proposition is: "The parties to the agreement of November 2, 1928, having by their own acts and conduct construed said agreement as interpreted by Chairman Fine, Plaintiff is estopped to urge a different interpretation after a lapse of twelve years." To this, the obvious answer is that plaintiff was not shown to be a party to the agreement, nor was there any basis in the pleading showing a right to the benefits thereof. Such being the fact, he was not subject to the provisions of the agreement, nor would a wrong construction of the agreement estop him from asserting any legal rights he really had.

■ The violation of his rights, as alleged by him, occurred within less than two years prior to the filing of the suit and, therefore, we think that the judgment is not subject to attack because of lapse of time.

By their eighth and last proposition, appellants assert: "The agreement assailed, having been entered into in 1928, and more than ten years having elapsed since its execution, several of the engineers affected having died or resigned, and the seniority of the remainder affected; and plaintiff having waited an unreasonable time in which to attack it or to seek a different construction than that given it by the officials of the Brotherhood, plaintiff's claim, if any, is now barred by limitation, laches and stale demand." We are inclined to the view that, in the absence of a breach of the contract, giving rise to a cause of action therefor, there is no statute of limitation, the effect of which would require, merely because of the lapse of time, any particular construction of the contract.

■ In this State, so far as we know, there is no cause of action recognized by law merely to establish the proper construction of a contract, in the absence of a claim for any other relief.

■ While it thus appears that no one of appellants' several propositions considered alone presents any ground requiring a reversal of the judgment, yet in combination they do force upon our attention the important consideration that appellee nowhere in his pleadings alleges facts essential to support any judgment in his favor. We determine, as a matter of law, that plaintiff has no legal rights of seniority such as he seeks to enforce, in the absence of a contract so providing, and to which he was a party, or which was made by the contracting parties for his benefit. Appellee's allegations concerning the only contract certainly involved show that he was not a party to the contract. No facts are alleged which show, or from which it is implied, that the contract was made for his benefit. In his pleadings appellee did, it is true, refer to formerly existing agreements between labor organizations and then existing railroad companies, as well as to certain Rules of the Brotherhoods, but no facts were alleged to show whether any such agreements did, or were of such nature that they could survive the alleged Railroad merger, or that plaintiff ever had any rights under such agreements or rules which would survive to him after he ceased to be a member of the Brotherhoods.

The judgment could not be sustained for another reason. We can scarcely conceive of any contract that could exist, made for plaintiff's benefit and supporting the rights asserted by him, to which the Railroad Company would not be a necessary party. While the Railroad Company was made a party, it was dismissed from the suit and

therefore not bound by the judgment. Such dismissal was the same as if the Railroad Company had never been made a party.

For the reasons stated, it is our conclusion that the judgment should be reversed and the cause remanded. It is accordingly so ordered.

### On Rehearing.

In the original opinion we held as an independent reason why the judgment could not be sustained that the Railroad Company was a necessary party, and, although it had been made a party, "it was dismissed from the suit and therefore not bound by the judgment." In appellee's motion for rehearing it is insisted we misinterpreted the record in this respect and that said party was not dismissed. It must be admitted that the judgment is at least ambiguous, and since that point was not urged what we said upon that question is withdrawn. We will interpret the judgment, as insisted by the appellee, as merely providing that the judgment for costs should not be applicable as against the Railroad Company. Otherwise, the motion for rehearing is overruled.