agreement'' of the parties, is affirmed in part and reversed in part, the reversal being for the reason that that part of the judgment reversed is contrary to law, and final judgment is entered thereon for the appellant.

*Judgments accordingly.*

HURD and KOVACHY, JJ., concur.

SANDERS, APPELLEE, *v.* VOGENITZ, APPELLANT.*

(No. 4827—Decided January 28, 1959.)

*Mr. Robert E. Shuff,* for appellee.
*Mr. Stanley Denlinger,* for appellant.

HUNSICKER, P. J.  This is an appeal on questions of law from a judgment in behalf of E. M. Sanders, the business agent, who brought the action on behalf of and for the benefit of Local 105 of the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America, herein called ''Local 105,'' against one of its members, Glen Vogenitz, the appellant herein.

Glen Vogenitz, on June 27, 1956, signed an agreement with Local 105, wherein he agreed in part as follows:

---

*Motion to certify the record overruled, April 29, 1959. Appeal dismissed, 169 Ohio St., 233.

"7. It is further understood and agreed that the party of the second part, will pay the sum of $3.00 per week to the Union Barber's Health and Welfare Trust Fund, for each employee covered by this Agreement and for himself, if he works with the tools of the trade, and it is further understood and agreed that the party of the second part will pay this contribution monthly to the trustee of the fund, or to any depository designated by them, not later than the 10th day following the end of any month, or for a shorter period of time, if the trustee do so determine.

"* * *

"10. It is further understood and agreed that the Union is the bargaining agent for all employees in effecting this agreement.

"11. It is further understood and agreed that all those working at the trade and those eligible to membership according to the Constitution of the International Union, shall be members in good standing in the Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union, and that every journeyman barber must present a working card to the proprietor, issued by the union, before he is engaged to work, except the proprietor shall have the right to hire nonunion barbers, if Local No. 105, is not able to supply union help when called upon, provided, however, that nonunion barbers employed shall immediately make application for membership and be issued a working permit by the secretary of the local union, pending final approval.

"12. It is further understood and agreed that any shop owner signing this agreement shall display the union shop card, and shall not permit the following unfair trade practices: Rendering of any service to a patron (at) not less than minimum prices established in said trade area or jurisdiction. The payment or allowance or [sic] rebates, refunds, commissions, credits or unearned discounts, whether in form of money or otherwise, or the extension to certain customers of special privileges not extended to all customers."

The agreement is to run until May 31, 1959, at which time it is stated in the agreement that the contract will be renewed

automatically for another three-year period, and thereafter again renewed every three years, presumably for the life of Glen Vogenitz. There is no provision in the agreement whereby Glen Vogenitz can withdraw from its operation.

We do not now decide the question of the validity of any renewal of such a contract, or the rights of one signing this agreement to withdraw from its operation at the end of the original term. That question is not now before us. We are dealing only with acts which are alleged to have occurred during the first three years of the agreement. This term of the agreement we believe to be valid as between the parties. We do not believe that we need discuss the theory of infectious invalidity, for we accept the agreement as valid, at least for three years.

Glen Vogenitz is a proprietor of a small barbershop in the city of Akron, Ohio, who works in that shop with the tools of his trade. He employs at times at least one other barber to assist him in the operation of the shop. The evidence shows that he did comply with all the terms of the agreement until May, 1957. Glen Vogenitz thereafter refused to display the union shop card in his place of business, and refused to pay the fee called for in section 7 of the agreement, set forth in full above.

This action was instituted in the trial court against Vogenitz by the business agent of the union for a mandatory injunction, which, in effect, was a request that Glen Vogenitz specifically perform the agreement he entered into with Local 105. The prayer of the petition is as follows:

"Wherefore, plaintiff prays that a temporary injunction be issued, enjoining and restraining defendant from employing any nonunion help at said barber shop; that defendant be enjoined from interferring with, coercing and restraining said defendant's employees in their rights to self-organization during the pendency of this action; that the defendant be required to enter into discussion of grievances with this plaintiff; that such defendant be required to show the union shop card and comply with all the terms and provisions of the collective bargaining agreement; and that, upon final hearing of this action, said injunction and restraining order be made permanent and that

the plaintiff may have all such other and further relief to which he may be entitled to in equity.''

There has been no picketing of the Vogenitz place of business, and no attempt to boycott his business on the part of the union. It sought, in a court of equity, to compel the performance of the agreement, and specifically those portions set out above.

The principal defense in this case was set forth by Mr. Vogenitz in paragraph 8 of his answer, which reads as follows:

''8. Further answering, defendant says that plaintiff has no claim to equitable relief nor does he come into court with clean hands; neither he nor the union herein involved has suffered nor will it suffer irreparable damage; defendant's conduct does not invade any of plaintiff's rights guaranteed under the Constitution and laws of the state of Ohio, but plaintiff's conduct and activities are in violation of the law and public policy of the state of Ohio; that defendant is compelled and coerced into being a dues-paying member and subject to the same regulations and constitutional provisions in the same union as are his employees; said plaintiff's conduct in so doing is an unlawful labor objective and is against sound public policy; such relationship stimulates, encourages and promotes enforced unlawful collusion to the detriment and ultimate destruction of the public's best interest and free enterprise, and the agreement herein pleaded sets up arbitrary rules for the operation of a private business and price fixing. Exhibit 'A' fixes the prices for a variety of services through the subterfuge of a collective bargaining agreement and is contrary to and in violation of the antitrust laws of Ohio.

''Defendant has demitted from the union and does not wish to continue as a member of the union with whom he is compelled to bargain for his employees, and to which he is an unwilling contributor to the union's promotion of policies contrary to the public interest.

''Defendant has requested the plaintiff to take from his shop the so-called union shop card, but plaintiff refuses and insists by threats that he continue to be a member of the union and operate a union shop.

"Said contract is invalid, illegal, void and unenforceable, as being violative of law and the public policy of Ohio."

We do not have a situation in this case bearing any similarity to the case of *Foutts* v. *Journeymen Barbers, Hairdressers & Cosmetologists' Int. Union of America, Local No. 105,* 155 Ohio St., 573, 99 N. E. (2d), 782. In this case we have a contract entered into by competent parties, which agreement covered a lawful subject matter. Our question in this case is, May this contract, between a union and one of its proprietor members, be enforced by an action for mandatory injunction? If there is an adequate remedy at law, then the union should pursue that remedy.

As to the payment of fees to the welfare fund, there could be a computation of the amount due and a judgment for that amount. The subject of fees paid to the welfare fund is only a minor part of this agreement. We have, in addition to the establishment of a welfare fund, provisions with respect to hours of work, wages, employment through the union of those who are to work in the shop, display of union card, and other matters pertaining to the conditions under which a union barber shall work.

The first question we must decide is whether Mr. Sanders had a right to bring this action. The Supreme Court of Ohio, in *Davies* v. *Columbia Gas & Electric Corp.,* 151 Ohio St., 417, 86 N. E. (2d), 603, said:

"1. For a person to properly institute an action for the benefit of himself and others, pursuant to the provisions of Sections 11254, 11256 and 11257, General Code [now Sections 2307.18, 2307.20 and 2307.21, Revised Code], pertaining to class actions, the petition must disclose a common or identical interest between the plaintiff and those he assumes to represent with a right to recovery or redress based on the same essential facts."

Mr. Sanders was a member in good standing of Local 105, a voluntary, unincorporated labor organization, whose membership it was alleged and proved consisted of many persons. The caption of the petition seems to indicate that the action was brought by Mr. Sanders directly for the union, whereas a

liberal construction of the allegations of the first and second paragraphs of the petition show that the action was a class action brought by Mr. Sanders for and on behalf of the members of Local 105.

We believe that the action was properly brought as a class suit within the terms of Section 2307.21, Revised Code.

"1. To entitle a person or persons to bring an action for the benefit of himself or themselves and others, the petition must disclose a community of interest among the plaintiff or the plaintiffs and all those on whose behalf the suit is brought, as well as a right of recovery by reason of the same essential facts, and the claims asserted must arise from a common source and represent a like interest. Mere community of interest in the issues of law and fact presented is insufficient." *Colbert* v. *Coney Island, Inc.,* 97 Ohio App., 311, 121 N. E. (2d), 911.

Our second and principal problem herein concerns the right of the members of Local 105 to enforce the agreement the union has with one of its own members, where that member is also a proprietor of a barber shop, and thus an employer. Mr. Vogenitz is a proprietor who works with the tools of his trade in much the same capacity as one of his employees.

There have been some Ohio trial court opinions on the subject, but we have not been cited by counsel to any reviewing court authorities except the cases of *Masetta* v. *National Bronze & Aluminum Foundry Co.,* 159 Ohio St., 306, 112 N. E. (2d), 15, and *Foutts* v. *Journeymen Barbers, supra* (155 Ohio St., 573). These latter cited cases are not controlling in the present situation. The instant action, except so far as the $3 welfare fee is concerned, does not involve a possible money judgment. The purpose of this action is to preserve to the members of the union the terms of an agreement which the membership, including this proprietor member, deemed beneficial to all the members. Satisfaction by way of damages could hardly compensate for the refusal to display the union shop card. Money damages would be difficult to assess where the union has lost a source of employment in the Vogenitz shop for other union members.

In the trial court case of *Leveranz* v. *Cleveland Home*

*Brewing Co.,* 24 N. P. (N. S.), 193, Mr. Leveranz sought, in behalf of himself and the members of his union, to enjoin a breach of a collective bargaining agreement respecting the rate of pay paid employees of the brewery. The trial court granted the relief prayed for, saying, at page 199:

"If a court of equity can not enjoin an attempted breach of such a contract, then the system of collective bargaining may as well be abandoned, and such advantages as come to both the employer and employee by reason of such system, will be lost, as the legal remedy is wholly inadequate. The expense of obtaining it would render it valueless."

With these sentiments we agree, for, if a union agreement is entered into in good faith, there should be available to either party a right to appeal to the courts, thereby providing a peaceful means for the settlement of the disputes between the parties, rather than to resort to the destructive policies of strikes, lockouts and boycotts.

A collation and discussion of authorities on the subject before us may be found in 18 A. L. R. (2d), 352 *et seq.,* and 156 A. L. R., 652 *et seq.* In the latter citation, the conflicting views with reference to specific performance and injunctive relief as available remedies, are discussed, and numerous authorities are cited in favor of each view. We refer also to an article in 69 Harvard Law Review, 601, wherein rights under a labor agreement are discussed.

We should note that the action herein does not involve a contract for personal services, or to collect on the part of many for wages due to the parties. This action, if successful, would affect all parties equally.

An important case bearing on the problem herein is *Sanford* v. *Boston Edison Co.,* 316 Mass., 631, 56 N. E. (2d), 1, wherein the union, through its officers, sought to compel the Boston Edison Company to recognize assignments of dues from wages of the employees. The company had, in the collective bargaining contract, agreed to this provision. The court said that the contract was the joint property of all the members of the union and could be enforced by an action in specific performance. That court cited with approval the following

statement from 5 Williston on Contracts (Rev. Ed.), Section 1418, page 3952:

"* * * where damages are an inadequate remedy and the nature of the contract is such that specific enforcement of it will not involve too great practical difficulties, equity will grant a decree of specific performance."

There are numerous authorities which declare the right of an employee member of a union, suing in behalf of the membership of such union, to maintain an action for injunction against an employer who seeks to breach a collective bargaining agreement previously entered into by the union with the employer. *Schlesinger* v. *Quinto*, 201 App. Div., 487, 194 N. Y. Supp., 401; *Gregg* v. *Starks*, 188 Ky., 834, 224 S. W., 459; *Janalene, Inc.*, v. *Burnett*, 220 Ind., 253, 41 N. E. (2d), 942; *Goldstein* v. *International Ladies' Garment Workers' Union*, 328 Pa., 385, 196 A., 43.

There are also many authorities which declare the right of an employer, who has entered into a collective bargaining agreement with a union, to enjoin the breach of such agreement, and in certain instances secure the specific performance of some of the terms of the union contract. *The Nevins, Inc.*, v. *Kasmach*, 279 N. Y., 323, 18 N. E. (2d), 294; *Western Maryland Dairy, Inc.*, v. *Chenowith*, 180 Md., 236, 23 A. (2d), 660.

In the instant case the situation is rather unusual, because the suit here is on behalf of the union members against one of the members of that union, who is also an employer of other union members whom he agreed to hire in a specific way, by asking the union to furnish his employees (similar to a hiring hall technique). Mr. Vogenitz, the member-employer, also agreed to display the union shop card, thereby announcing to his customers his compliance with the standards adopted by the union. We believe this agreement to be unique and of benefit to all the membership, and thus a subject where damages would not adequately compensate for a violation of the terms of the agreement.

Only equity, through the process of a mandatory injunction, can secure for the membership of this union all of the benefits for which the parties contracted.

We have examined all of the claimed errors, and find none prejudicial to the substantial rights of the appellant.

The judgment of the trial court must be affirmed.

*Judgment affirmed.*

STEVENS and KOVACHY, JJ., concur.

KOVACHY, J., of the Eight Appellate District, sitting by designation in the Ninth Appellate District.