**PRIMAKOW v. RAILWAY EXPRESS AGENCY, Inc., et al.**
**Civil Action No. 563.**

District Court, E. D. Wisconsin.
July 9, 1943.

414

Harry A. Kovenock of Milwaukee, Wis., for plaintiff.

Miller, Mack & Fairchild, of Milwaukee, Wis., for defendant Railway Express Agency.

Shea & Hoyt of Milwaukee, Wis., and Leo J. Hassenauer, of Chicago, Ill., for defendant Ella C. Gregg.

DUFFY, District Judge.

Plaintiff, an employee of the defendant Railway Express Agency (hereinafter called "company"), claims a seniority status superior to that of defendant Ella Gregg, who like the plaintiff is employed as a stenographer in the office of the superintendent of the Wisconsin Division.

It was agreed at a pre-trial conference and an order was so entered on May 11, 1943, that a trial be had on the preliminary issue of whether plaintiff is bound and concluded by the decision of Express Board of Adjustment No. 1, dated October 23, 1940, which decision was adverse to the contentions of plaintiff herein.

The parties as employees and employer, together with disputes between them, are subject to the Railway Labor Act of May 20, 1926, 44 Stat. 577, as amended by the Act of June 21, 1934, 48 Stat. 1185, 45 U.S.C.A. § 151 et seq. The act was passed to secure the prompt and orderly settlement of disputes between carriers and their employees. This legislation is constitutional. Virginian Ry. Co. v. System Federation No. 40, Railway Employees Department of American Federation of Labor et al., 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789. It granted the employees the right to organize and bargain collectively through representatives of their own choice and established the Railroad Adjustment Board as a tribunal for settling disputes involving employees. The act directs that disputes between an employee and carrier should be handled in the usual manner up to and including the chief operating officer designated to handle such disputes; but if no adjustment is reached in that manner, the dispute may be referred by petition of either party to the appropriate division of the

Adjustment Board, which was empowered to conduct hearings and to make awards.

■ An alternative mode of handling such disputes is provided under Sec. 3 (Second) of the act as amended, 45 U.S.C.A. § 153, Second, to wit:

"Second. Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board."

When such alternative mode of adjustment of such disputes is employed, the system, group, or regional board, as the case may be, has exclusive jurisdiction. Atlantic Coast Line R. Co. v. Pope, 4 Cir., 119 F.2d 39, 43.

Effective August 7, 1934, the company and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter called the "brotherhood"), which was the collective bargaining agent of the employees of the company, entered into an agreement for the establishment and maintenance of a board of adjustment "pursuant to Section 3, Paragraph Second of the amended Railway Labor Act of 1934." This agreement (defendants' Exhibit A) did not provide for any name or designation of the board of adjustment established thereby. Its designation as "Express Board of Adjustment No. 1" appears to have been adopted by the board itself.* It will be referred to hereinafter as the "express board".

Pertinent provisions of the agreement establishing the express board are:

"Article 5—The Board may make its own rules of procedure, including rules as to place and time of meeting, * * *

"Article 6—Parties to a dispute may be heard either in person, by counsel or by other representation, as they may respectively elect.

"In order that such parties may be advised of Board meetings, due and timely notice shall be given to the employe or employes involved in such dispute.

"Article 7—In all questions voted upon a majority of votes cast shall decide the issue.

"The decisions of the Board, including those rendered with participation of a neutral Referee (as provided in Article 12 hereof), shall be final and binding upon both parties and it shall be the duty of both to abide by such decisions.

\* \* \* \* \* \*

"Article 12—Upon failure of the Board to agree upon a decision or award in any case or cases because of a deadlock or inability to secure a majority vote as provided in Article 7 hereof, then the Board shall forthwith agree upon and select a neutral person known as 'Referee' to sit with the Board as a member thereof and make awards in such deadlocked cases. \* \* \*"

The express board was composed of four members, two of which were brotherhood members representing the employees, and the other two represented the company. Rules of order (Exhibit C) were adopted on June 29, 1939.

The seniority rights in question are asserted under a collective bargaining agreement (Exhibit B) dated August 1, 1937. It was by virtue of this agreement alone that any seniority rights accrued. At the instance of the brotherhood, the controversy was filed with the express board on January 22, 1940. The company was the adverse party. The brotherhood espoused the cause of Mrs. Gregg, while the company vigorously supported the contentions of the plaintiff herein. A hearing before the express board at Houston, Texas, on March 21, 1940, resulted in a deadlock. The meeting was then adjourned to October 1, 1940, when the board, meeting at Denver, Colorado, with Honorable James H. Wolfe, a Justice of the Supreme Court of Utah, acting as referee, again considered and spent considerable time on this controversy. On October 23, 1940, the referee filed his decision, which, under the terms of the agreement establishing the express board, became its decision. It was adverse to the seniority claims of the plaintiff herein, and

---

\* Rules of Order of Express Board of Adjustment No. 1, dated June 29, 1939 (defendants' Exhibit C).

favorable to the claims made by the defendant Gregg.

Plaintiff contends that she is not bound by this decision of the express board; that she was not a party to the controversy which was before the board; and that in fact she had no notice of the hearings before the board.

■ Article 6 of the agreement establishing the board provides that parties to a dispute may be heard either in person, by counsel, or other representation. Plaintiff was not a named party to the dispute. It is evident that she was very much an interested party and had as much at stake as Mrs. Gregg. Article 6 further provides that due and timely notice shall be given to the employee involved in a dispute before the board. I am of the opinion that the plaintiff was entitled to due and timely notice. I find myself in agreement with the statement of the court in Estes v. Union Terminal Co., 5 Cir., 89 F.2d 768, 770, 771:

"No man should be deprived of his means of livelihood without a fair opportunity to defend himself. Plainly, that is the intent of the law. The case at bar illustrates how a single employee may be caught between the upper and nether millstones in a controversy to which only a labor organization and a carrier are parties before the Board. It is not necessary for an employee to be named as a party to the proceeding before the Board to be involved in the controversy within the meaning of the law.

"* * * Notice should be given in some adequate way to all persons who will be substantially affected by the order that may be entered by the Board, unless notice is waived."

■■ Our inquiry, therefore, should be: Did the plaintiff have due and timely notice of the hearings before the board, or did her conduct constitute a waiver of such notice? Defendants contend that since the plaintiff was a member of the brotherhood, notice to it was notice to her. The brotherhood had full notice at all times. In addition, the local chairman was notified of the board's docket of hearings and this information was given at meetings of Milwaukee Lodge No. 2043. The plaintiff was entitled to attend such meetings, but did not in fact do so.

It cannot be contended that the brotherhood was representing the plaintiff in this controversy. It was in fact vigorously contesting her claim, and, in championing the cause of Mrs. Gregg, it pro tanto opposed the interests of the plaintiff.

Although the seniority rights of plaintiff arose under the collective bargaining agreement, seniority rights are the exclusive property of the individual employee. They are property within the Fifth Amendment of the United States Constitution. Griffin v. Chicago Union Station Co., D.C., 13 F. Supp. 722, affirmed Nord v. Griffin, 7 Cir., 86 F.2d 481, certiorari denied 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879. Notice to the brotherhood, therefore, was not notice to the plaintiff herein.

An examination of the plaintiff's conduct, together with the letters written by her, discloses that there was no waiver of notice on her part. The matter of the roster was involved and complicated. The company changed the roster at least five times. On three rosters, defendant Gregg had seniority over the plaintiff, and on the other three the reverse was true. Plaintiff's letter of February 13, 1939, shows she was under the impression that the controversy was then before the express board. On March 1, 1939, Mr. Hartung, vice president of the company, wrote the plaintiff that the matter was not before the express board, but rather was before the company committee on wages and working conditions. It was in fact nearly a year later before the matter was presented to the express board.

■ The plaintiff did not in fact know of the meetings in Houston and Denver. Under the terms of the agreement establishing the express board she was entitled to be present at such meetings, as well as to have due and timely notice thereof. As she did not receive notice and did not at any time waive such notice, it is my conclusion that she is not bound and concluded by the decision of Express Board of Adjustment No. 1, dated October 23, 1940.