## PRIMAKOW v. RAILWAY EXPRESS AGENCY, Inc., et al.

### Civil Action No. 563.

District Court, E. D. Wisconsin.
April 27, 1945.

H. A. Kovenock and Arthur K. Hellermann, both of Milwaukee, Wis., for plaintiff.

Miller, Mack & Fairchild, of Milwaukee, Wis. (by Steven E. Keane, Marcus L. Plant, and Paul R. Newcomb, all of Milwaukee, Wis.), for defendant Railway Express Agency.

Shea & Hoyt, of Milwaukee, Wis. (by Ralph M. Hoyt, of Milwaukee, Wis., and Leo J. Hassenauer, of Chicago, Ill.), for defendant Gregg.

DUFFY, District Judge.

Plaintiff, an employee of the defendant Railway Express Agency (hereinafter referred to as "company"), claims a seniority status superior to that of defendant Ella C. Gregg who, like the plaintiff, is employed as a stenographer in the office of the superintendent of the Wisconsin Division of the company.

Reference is made to Primakow v. Railway Express Agency, Inc., et al., D.C., 57 F.Supp. 933, for the opinion of this court on the motion to remand, and Id., D.C. 56 F.Supp. 413, for the opinion of this court that the plaintiff was not bound and concluded by the decision of Express Board of Adjustment No. 1 dated October 23, 1940.

Mrs. Gregg's employment in the company commenced on February 1, 1919, in the Claim Department where she remained until transferred to the office of Superintendent W. C. Morgan on November 25, 1927. Plaintiff's employment commenced July 13, 1925, and has been continuously in the superintendent's office since that date.

Starting about 1930, Superintendent Morgan customarily gave his stenographic work to Mrs. Gregg. This work occupied the major part of her time, but when not so engaged she did perform work for others in the office. In the parlance of the office Mrs. Gregg was referred to as the superintendent's stenographer.

The rights of the parties are to be determined by the collective bargaining agreement dated August 1, 1937, between the company and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Steamship Employees (hereinafter referred to as the "brotherhood"). A prior collective bargaining agreement dated February 1, 1931, providing among other things for seniority among the company's employees, specifically provided that the office force in the superintendent's office was excepted. The applicable provision of the August 1, 1937, agreement read: "These rules shall not apply to * * * (c) * * * One (1) Chief Clerk and one (1) personal stenographer of such officials as Superintendents or their equals in official rank. * * *"

The 1931 agreement did not cover any of Superintendent Morgan's office force, which included three stenographers, two of whom were plaintiff and Mrs. Gregg. Under the new agreement all of the stenographers in his office would have seniority rights except "one personal stenographer" of the superintendent. It was up to Superintendent Morgan either to designate one of the stenographers in his office as his personal stenographer or bring in a new one from the outside. He decided on the latter course, one of his reasons being that he preferred a male stenographer who could accompany him on trips outside the city.

Morgan was unable to inform Mrs. Gregg of his decision prior to August 1, the effective date of the agreement, as she was then absent on her vacation, but a few days thereafter Morgan called her to his private office and informed her of it and requested her to continue taking his personal dictation for a few weeks until such time as Milton Barndt, the man he had selected, who was at that time working in another department, was available. Mrs. Gregg not only did not protest, but stated she was glad someone else was to have the position as she would then be under the new agreement which, among other things, would protect her seniority. Morgan told her she would have to elect whether to return to the Claim Department or remain in the superintendent's office.

Barndt became available for his new duties on October 25 and shortly prior thereto Morgan gave notice to Mrs. Gregg of Barndt's availability and assigned her to duty with the chief clerk. On October 20 he notified her by letter that she must make her election before November 1. She promptly filed an election to remain in the superintendent's office and on October 25 began work for the chief clerk.

Under Rule 20 of the new agreement the company was required to post in January of each year a roster showing the seniority of all employees under the agreement. The rule also provided that employees had 60 days thereafter to protest any changes in their status. No roster having previously been necessary in the superintendent's office because all of the employees therein had been exempt, the company posted its first roster as to the superintendent's employees on October 23, 1937, which showed Mrs. Gregg in position 4 and plaintiff in position 5. The first three positions were assigned to employees other than stenographers. Six weeks later plaintiff forwarded a protest to Superintendent Morgan claiming she was entitled to seniority over Mrs. Gregg for the reason she entered the superintendent's office in 1925 while Mrs. Gregg started work in that office in 1927. Her protest was unavailing and in the 1938 roster as well as the first roster in 1939 plaintiff's name appeared below that of Mrs. Gregg. However, in March Morgan changed his position on the question of seniority, posting a roster on March 9, 1939, giving plaintiff priority over Mrs. Gregg; but upon receiving a protest from Mrs. Gregg he again reversed his position,

and in a roster posted March 25 Mrs. Gregg's name was again above that of plaintiff.

Plaintiff then filed a protest which finally reached the general manager of the company who sustained her position. A roster posted November 27, 1939, gave plaintiff seniority over Mrs. Gregg. The brotherhood, upon behalf of Mrs. Gregg, then took an appeal to Express Board of Adjustment No. 1. After the first hearing the board deadlocked and called in a referee to hear and decide the case. The referee was Honorable James H. Wolfe, Justice of the Supreme Court of Utah, and his decision was favorable to Mrs. Gregg. On November 7, 1940, the company posted a new roster giving Mrs. Gregg seniority over plaintiff. Thereafter plaintiff filed this suit and this court decided as a preliminary issue that because of lack of notice of the hearings plaintiff was not bound by the determination of Express Board of Adjustment No. 1.

I find myself in agreement with the decision of Judge Wolfe and the reasons he assigned for his conclusions. The difficulty and confusion has arisen from the fact that in office parlance Mrs. Gregg was often called the superintendent's stenographer, while the new agreement of August 1, 1937, gave a status and meaning to the designation, "personal stenographer of the superintendent," which had not theretofore existed. In the first protest filed by plaintiff she claimed seniority over Mrs. Gregg because she had entered the superintendent's office in 1925 whereas Mrs. Gregg was not employed in that office until 1927. The basis of this protest was unsound because Rule 3 provides, in part, "Seniority shall consist of time in continuous service of the Railway Express Agency and American Railway Express Company * * *." Mrs. Gregg entered the company's employ in 1919, six years prior to the entry date for the plaintiff. However, as I understand the plaintiff's position in this suit, the contention now made for her seniority rests on the elimination of any seniority rights for Mrs. Gregg on the grounds that at the time the new agreement went into effect Mrs. Gregg was in fact the personal stenographer of the superintendent and therefore does not come under the agreement.

The new agreement created a new position with incidents different from those performed by anyone who formerly might

have been designated as a preferred stenographer in the superintendent's office. After August 1, 1937, all stenographers in that office except a personal stenographer for the superintendent were to be classified and have a fixed basic monthly service time and seniority rights, whereas under the 1931 agreement all of the stenographers in that office had been excepted employees.

Plaintiff argues that Mrs. Gregg automatically became the personal stenographer of the superintendent on August 1 because prior to that date she had been the preferred stenographer who took little or no other office dictation. This contention has no merit. I fully agree with what Judge Wolfe had to say about it, and quote with approval from his decision, as follows:

"* * * I think the position of personal stenographer was not filled until after August 1st, 1937, until Superintendent Morgan intended to fill it definitely and manifested such intent by outward acts or declarations brought home to Mrs. Gregg. Certainly the simple continuation of Mrs. Gregg as preferred stenographer over the deadline could not commit her to the excepted position of 'Personal Stenographer' against her will and desire. Such would work a gross injustice on her. The reward for being capable enough to be preferred by the Superintendent would result in fastening upon her a status by mere flow of time which she not only did not desire but later expressly decided against by definitely choosing to be classified within the ninety days permitted for that purpose. Certainly Note 2 of Rule 1 implies a time after August 1st in which such choice can be made. If by the mere accident of allowing herself to go across the deadline as the personal stenographer of W. C. Morgan as the term is used in office parlance she became his personal stenographer within the meaning of that term as used in the exceptions to Rule 1, and by such fact acquired a lower seniority rating than the other stenographers in the office, the intent and spirit of Note 2 would not be fulfilled. It seems unrealistic to assert that the only way Mrs. Gregg could avoid the unintended transmutation of herself from the mere position of preferred stenographer as used in office parlance and established for the orderly running of the office to the position of 'personal stenographer' carrying exception from the Agreement, was to have the Superintendent renounce her as his preferred stenographer before August 1st, 1937, either by definite announcement or by displacing her with another stenographer. If such were the case what would be the situation of the one who took her place as preferred stenographer before August 1st, 1937? That person would be in the same unfortunate position if she went over the deadline as personal stenographer. * * *

*    *    *    *    *

"In order for Mrs. Gregg to become Mr. Morgan's personal stenographer as intended by the exceptions to Rule 1, he must have intended her to be such and manifested such intention by declaration or acts which would have put her on notice that she was considered such. What are the facts? They are just to the contrary. She innocently went along after August 1st as she had before, taking Morgan's dictation."

Superintendent Morgan was undoubtedly aware of the reason for exempting one personal stenographer. His office was being unionized for the first time. The superintendent was the officer in Milwaukee who would be dealing with union representatives. His correspondence, activities, and work manifestly would be of such a confidential nature that both the company and the brotherhood recognized the propriety of permitting the superintendent to have a stenographer who was not a member of the union. It certainly was not contemplated or intended that the position would necessarily be filled by the one to whom, through mere chance or personal preference in the past, the superintendent had given most of his dictation in the office.

Plaintiff relies heavily upon certain office records used in making up payrolls when a change in anyone's salary occurred. A certain Form 945 is pointed to, with emphasis on the fact it was signed by Superintendent Morgan. It designated Mrs. Gregg's assigned work days per year as 365, contrasted with a specification of 306 days for other stenographers. This probably proves that the clerk who made out the sheet or form considered Mrs. Gregg occupied the excepted position, but that is a long way from proving an intention on the part of Superintendent Morgan to designate Mrs. Gregg as his personal stenographer within the meaning of the new collective bargaining agreement.

The record is clear as to Mrs. Gregg. She did not want the excepted position. It was never offered to her, and in fact the superintendent told her in early August that it was to be filed by Milton Barndt. She did not sign Form 945 or any other paper showing she had any idea or knowledge that she held the excepted position.

I conclude that plaintiff has not established her seniority rights over defendant Gregg and that the action must be dismissed.