## McMenamin et al. v. Philadelphia Transportation Co.

*Robert G. Kelly*, for plaintiffs.

*Ballard, Spahr, Andrews, Ingersoll & White,* for defendant.

GORDON, JR., P. J., February 7, 1946.—This is a bill in equity brought by four former employes of de-

fendant, the Philadelphia Transportation Company, for a mandatory injunction to compel their reinstatement to their former positions as street car conductors, and for damages for their alleged wrongful discharge; and the case is before us on preliminary objections to the bill.

Three questions are raised by the objections: first, whether the bill is multifarious and in violation of equity rule 36 relating to the joinder of parties in equity proceedings; second, whether equity has jurisdiction to compel the reinstatement and continued employment of plaintiffs by defendant; and third, assuming that equity does not have such jurisdiction, whether, with respect to the prayer for damages, plaintiffs have not an adequate remedy at law.

As the case is before us on a demurrer to the bill the following facts appear from the pleadings. Prior to, and until, August 1, 1944, the four plaintiffs had been employes of defendant company and its predecessor, the Philadelphia Rapid Transit Company; plaintiff, McMenamin, having been 16 years in defendant's service; plaintiff, Carney, 20 years; plaintiff, Dixey, two and a half years, and plaintiff, Thompson, one and a half years. Each of them had acquired by reason of his employment certain seniority rights, which increased in value as his employment lengthened, and which included future participation in pension plans, vacations with pay, job preference, and other desirable privileges of employment.

On August 1, 1944, the transportation workers' union of the Philadelphia Transportation Company, went on strike, and on August 3, 1944, pursuant to an executive order of the President of the United States, the Secretary of War acting through Major General Philip Hayes of the United States Army, took over the transportation functions of defendant company. Following the seizure of the company's lines, General Hayes ordered all striking employes to return

to work by August 7, 1944, and when the four plaintiffs reported for work on that date, they were denied their former positions, and each was given a written notice stating that he was "discharged for cause". It is not clear from the pleadings, nor do we think it important at this time, whether the notices plaintiffs received were technical discharges or were merely refusals to take back four former employes who had already left their employment and vacated their positions by going out on strike. However that may be, the bill avers that the four plaintiffs were the only ones of the striking employes who were not taken back, and that plaintiffs knew of no cause for complaint against them. On August 9, 1944, defendant company entered into a new collective bargaining agreement with another union, the Transport Workers' Union Local No. 234, affiliated with the C. I. O., which had been designated as the collective bargaining agent for transportation employes of defendant. Plaintiffs were never members of this union, and on August 28, 1944, following requests to defendant for their reinstatement, plaintiffs were advised that they would be granted a hearing before the industrial relations committee of defendant only upon the written request of the Transport Workers' Union, or on their own written request if the union refused to make such a request on their behalf. Thereafter, the union having refused to represent plaintiffs, both "singularly or collectively in any controversy" with defendant, each of the plaintiffs wrote identical letters to defendant requesting a hearing in connection with their so-called discharge, which were delivered to defendant on August 31, 1944; and on September 6, 1944, those requests were curtly refused in identical letters sent to each of the plaintiffs.

Upon the foregoing facts as averred in the bill, the following questions are presented for our determination by the preliminary objections: (1) May several

employes, each of whom has been employed under an individual employment contract, join in a single bill in equity asking for injunctive relief against an employer for allegedly wrongful action which affects each of the employes in the same manner? (2) Assuming a wrongful discharge of plaintiffs by defendant, will a court of equity compel an employer to rehire such a discharged employe merely because his seniority rights may be lost or otherwise injuriously affected by the wrongful discharge?

With respect to the first of these questions, namely, the alleged multifariousness of the bill because of the joinder of plaintiffs' causes of action in one bill in violation of Equity Rule 36, we are inclined to the opinion, in view of certain decisions of the Supreme Court which will be referred to, that the bill is not objectionable on this ground. Rule 36 provides:

"Plaintiff may join in one bill as many causes of action, cognizable in equity, as he may have against the defendant; but, *if there is more than one plaintiff, the causes of action included must be joint,* and if there is more than one defendant, the liability must be one which can be asserted against all of the material defendants, unless sufficient grounds are shown for uniting the causes of action, in order to promote the convenient administration of justice. If it appears that they or any of them cannot be conveniently heard with the others, the court may allow a severance for the purposes of trial." (Italics supplied.)

In support of the preliminary objections on the ground now under consideration, defendant relies entirely upon the case of Ryan v. Reddington, 240 Pa. 350, and were it the only decision of our appellate courts upon the question, we would not feel at liberty to depart from the rule announced in that case that only plaintiffs with a joint right can join in one suit against a defendant. In it four school teachers, who had been

hired by a local school board to teach in four separate schools, and who were later summarily dismissed, brought a bill in equity to compel the board to reinstate them to their former positions. The board demurred to the bill on the ground that no equitable cause was presented, and that there had been a misjoinder of parties plaintiff. The Supreme Court, in an opinion by Mr. Justice Mestrezat, upheld the contention of the board that the bill was not cognizable in equity, adding, to a large extent by way of obiter dictum, at page 353:

"The bill was clearly demurrable on the ground of misjoinder of parties. The plaintiffs had no right, either at law or in equity, to maintain a joint suit against the defendants, as a school board, on the cause set forth in their bill. The averments of the bill disclose an employment of the four plaintiffs respectively to teach four different schools in the township. It is, therefore, a contract with each individual plaintiff to teach a certain designated school in the township at a stated compensation for a fixed period. The rights of the respective plaintiffs, are several and individual, depending upon the circumstances of each case, and each has an appropriate remedy to recover whatever damages he may have sustained by his wrongful discharge as a teacher. The plaintiffs were not jointly employed to teach any one school or number of schools, but were severally and individually employed to teach a separate and different school. The claim, therefore, as set forth in the pleadings was not a joint claim conferring a joint right of action on the plaintiffs against the defendants, but was a separate and individual claim of each plaintiff against the defendants."

Although, standing alone, this decision would seem to rule the question before us, later decisions of our Supreme Court have so modified it that, though not expressly overruled, it has become of dubious authority for any but the plainest cases of multifariousness, and should, we believe, be limited in its application to the

joinder of wholly unconnected claims. It appears to have been cited but once in later decisions upon the question of misjoinder, where it is referred to by way of dictum in a concurring opinion by Mr. Justice Linn in Equitable Loan Soc. Inc. et al. v. Bell, Secretary of Banking, et al., 339 Pa. 449, at page 463. On the other hand, in Lafean et al. v. American Caramel Co., 271 Pa. 276, where separate employment contracts were also involved, and where the employer's action in discharging the employes affected each of them in the same manner, Mr. Justice Walling, discussing the joinder in one bill of the employes' requests for equitable relief, said, at page 283:

"The matters here complained of are of the same nature and all grow out of the same transaction, between the same parties, and we are not convinced that the bill should have been dismissed as multifarious. The question of multifariousness is one of convenience and very much within the discretion of the court . . ."

And again, in Komenarsky, Receiver, v. Brode et al., 307 Pa. 156, Mr. Justice Kephart in speaking of Equity Rule 36 said (p. 158):

"Where distinct and independent causes of action are joined in one bill, or several parties not connected with the controversy in its legitimate scope are joined, a bill in equity is multifarious. But, if the court, in its discretion, believes the joinder in one suit of different matters or parties will promote the convenient administration of justice, the bill will be sustained. . . .

"No bill is multifarious that presents a common point in litigation, the decision of which will affect the entire subject-matter. The parties must be material, and attached to or connected with the liability and each other in some manner . . ."

See also Zoni v. Importers and Exporters Insurance Company of New York, 338 Pa. 165, at page 168; Bellevue Borough et al. v. The Manufacturers' Light &

Heat Co., 20 Dist. R. 547, affirmed on other grounds 238 Pa. 388.

Considering these later authorities, therefore, it seems reasonably clear that the word "joint" as used in Equity Rule 36 has acquired a broader significance and is no longer limited to the narrow technical meaning originally given to it by the earlier decision in the Ryan case. The modern test for determining whether a joinder of plaintiffs is permissible emphasizes the matter of convenience in trying together cases arising out of closely connected factual situations, rather than having a court needlessly burdened by a multiplicity of separate actions all of which involve substantially the same legal questions:

"The fact that the same conduct of the defendant is objected to and that the existence of a legal injury to each plaintiff will be proven by the same or similar facts and the same rules of law will be applied is recognized as justifying the joinder of plaintiffs asserting separate and independent rights": Goodrich-Amram Civil Practice, §2229 (a) -1, at page 35.

From the allegations of the bill the case at bar falls well within such a permissible joinder. Although plaintiffs may have been hired by defendant separately and at different times, all the material terms and conditions of their employment were the same and were apparently fixed by defendant's contract with the union that was at the time the bargaining agent of its employes. Plaintiffs went on strike with others for the same cause and at the same time; they attempted to return to work on the same day and in response to the same call and were refused reëmployment, under the pleadings, for the same vaguely expressed reason, namely "discharged for cause". Their subsequent efforts to secure a hearing and defendant's refusal to accord it to them were likewise substantially identical, and there is nothing in the bill to indicate that they

were not jointly dealt with by the dismissing authority, or that their rights turn upon different factual and legal questions. The amount of damages to which plaintiffs may be entitled, if they ultimately prevail in the suit, appears to be the only respect in which their claims will probably differ. In our opinion, therefore, the preliminary objection to the bill on the ground of multifariousness is without merit, and will be dismissed. Whether such a joinder of plaintiffs' claims for damages at law is permissible remains to be decided by that side of the court on the certification of the case to it.

This brings us to a consideration of the principal question raised by the preliminary objections, whether equity will compel specific performance by an employer of a contract of employment. Apart from the prayer for damages for their alleged wrongful dismissal, as to which, of course, plaintiffs have an adequate remedy at law, the only equitable relief prayed for is a mandatory injunction for their reinstatement. This is grounded upon the contention that by their dismissal they lost valuable seniority rights dependent upon their continued employment, which are in the nature of property rights, and which equity will protect by a decree for reinstatement even though, in the absence of such rights, it would be without jurisdiction to prevent their discharge at the pleasure of defendant. With this contention we cannot agree. Seniority rights are not independent and self-existing rights of property. They are merely incidents of an existing employment, conditioned upon it and limited by its duration. In fact, as their name implies, seniority rights are largely future and inchoate and depend for their ripening upon the contingency of a continuing employment. To view them as in any way controlling the right to the employment which creates them, would be equivalent to viewing the tail as wagging the dog, or a cause as being created by its effect. The mere possession of

seniority rights alone has never been held to give an employe a right to compel his employer to continue employing him indefinitely, no matter how unwilling the employer may be to do so, or to reëmploy one whom he has already dismissed. Courts of equity have never heretofore done so, and, while that fact alone does not determine the question, it challenges a careful consideration of the authorities before adopting so radical an extension of our equity powers and jurisdiction without legislative authority.

It is well established that, under ordinary circumstances, equity will neither compel an employe to work for another, nor an employer to retain in his employ a servant or agent who is distasteful to him: Ryan v. Reddington, 240 Pa. 350; Mosshamer v. Wabash Railway Co., 221 Mich. 407; Schwartz et al. v. Wayne Circuit Judge, 217 Mich. 384; Weiss v. Levine, 133 N. J. Equity 441, in which equity refused to prevent an employe from quitting his employment. And this is so regardless of whether there has been a breach of the employment contract. Thus, in Glauber et al. v. Patof et al., 45 N. Y. S. (2d) 69, the New York Court held that:

". . . it still is obvious that courts of equity have no jurisdiction to compel one man to hire another, and consequently cannot decree that plaintiffs' former employer shall re-employ them. That is true, even if their former employer wrongfully participated in or induced their expulsion from the union by means which would render the employer liable for damages in an action at law."

If there is a breach of contract the remedy of both the employer and employe is at law for damages: Ward v. Kurn et al., 234 Mo. App. 241; where an employer discharged an employe without a hearing, and thereby deprived him of his seniority, damages of $3,000 were awarded; see also McGee v. St. Joseph Belt Ry. Co., 235 Mo. App. 707.

There are a number of recognized or apparent exceptions to these well-established principles. For example, where the employment contract contains negative covenants by the employe not to work for another, a court of equity will, upon a showing that the services of the employe are of an unique quality, restrain him from working for anyone other than his original employer: Philadelphia Ball Club, Ltd., v. Lajoie, 202 Pa. 210; Cincinnati Exhibition Co. v. Marsans, 216 Fed. 269; Mission Independent School Dist. v. Diserens, 188 S. W. (2d) 568; Lumley v. Wagner, 1 DeG. M. & G. 604, 42 Eng. Rep. 687; (Cf. Molina et al. v. Barany, 56 N. Y. S. (2d) 124, in which it was held that if the employe's services are not unique, equitable relief will be denied as being contrary to public policy). A distinction must also be drawn between an ordinary agency or employment, and those cases in which reinstatement is granted to an office or position of public employment, where the tenure of office is regulated by positive law, or where a dismissal is forbidden by law except for cause or in a particular manner. In those cases the real employer is the State or its local governmental agency, and the discharging official is, of course, bound by the will of the real employer as expressed in the organic law.

Apart from the exceptions just indicated and those cases, of which Lafean et al. v. American Caramel Co., supra, is an example, in which the employment to which reinstatement was ordered was coupled with an interest, no case has been called to our attention in which equity has compelled an employer to rehire a discharged employe merely because of the consequent loss of seniority rights. Wherever equity has intervened to protect seniority rights, it has done so in favor of one enjoying an actual, subsisting employment. Thus, in Grand International Brotherhood of Locomotive Engineers, etc., et al. v. Mills et al., 43 Arizona 379, the case principally relied on by plaintiffs, the relief was granted

to individuals who were presently employed, or who retained the status of employes at the time the suit was brought. Between individuals who are employes possessing seniority rights, equity will, of course, compel the employer to recognize one to the exclusion of the other. In such cases the employer has little concern, and generally submits to equity so that he shall be protected when he selects one employe over another. In the case just referred to plaintiffs were employes of a railway who had acquired certain seniority rights, and claiming that their rights were being interfered with, asked a court of equity to prevent the interference. In the course of its opinion, the court said, at page 405:

"Nor is this a question of compelling an unwilling party to perform personal services or to employ certain men, as was the case in Schwartz v. Wayne Circuit Judge, supra, and Schwartz v. Cigar Makers International Union, supra. There is no attempt made to interfere in the slightest degree with the right of the company to employ or discharge men. The only request is that, so long as it does retain men in its service, it shall live up to their contracts of employment."

Again in Ledford et al. v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co. et al., 298 Ill. App. 298, plaintiffs, a group of railroad employes having the ordinary seniority rights, were laid off, due to a slack period in the work. They asked for an injunction to compel the railroad to give them the available work in preference to another group of employes, and in granting the injunction the court said, at page 308:

"The contention of defendants that equity will not enforce a contract for personal services by injunction or by decree for specific performance to the extent that it will not compel an employer to hire nor an employe to work against his will is, of course, well settled by the decisions of the Courts of this and of other States. . . . This doctrine is not, however, without limitations

. . . However, the point as made here disregards the allegations of the amended complaint, to the effect that plaintiffs have not been discharged and that the relationships of employer and employe between the railroad and the plaintiffs were not terminated on July 19, 1935. The wrong alleged is not that of the disregard of their legal rights by a wrongful discharge but a conspiracy to disregard seniority contractual obligations of defendant railroad to plaintiffs as established by their contracts while they remain employes."

It is true that courts of equity have, on occasion, in requiring an employer to grant, or restore, seniority rights to an employe, characterized such rights as the property of the employe. This is doubtless so where the employment out of which the right arises is existent. But it has never been so held where the right is considered divorced from the employment, and we have not yet reached the point where an employer has been compelled by equity to rehire a discharged employe solely because, when dismissed, he had rights which died with his dismissal: Dooley et al. v. Lehigh Valley Railroad Company of Pa., 131 N. J. Eq. 468; Primakow v. Railway Express Agency, Inc., et al., 56 F. Supp. 413; Steele v. Louisville & N. R. Co. et al., 245 Ala. 113; Mosshamer et al. v. Wabash Ry. Co. et al., supra; Chambers et al. v. Davis et al., 128 Miss. 613; Cooke v. Dodge et al., 164 N. Y. Misc. 78.

For the foregoing reasons it seems amply clear that the plaintiffs in the present proceeding can have no right to an injunction compelling defendant to re-employ them. While it may be that their seniority rights have been affected by their discharge, and that equity would concern itself with them were plaintiffs still employes, they have been discharged, whether rightfully or wrongfully, and their only redress is in an action at law for damages. This being our conclusion upon the preliminary objection going to our jurisdiction to grant the equitable relief prayed for,

it is evident that the bill cannot be amended to meet so basic a defect, and hence, there is no reason for giving the plaintiffs an opportunity to amend.

Accordingly we now make the following order in the case:

### Order

And now, to wit, February 7, 1946, defendant's preliminary objection to the bill no. 2 is overruled; preliminary objection no. 3 is sustained, and the bill is certified to the law side of the court for further proceedings.