George W. Ledford et al., Appellants, v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company et al., Appellees.

Gen. No. 40,128.

Opinion filed January 16, 1939. Rehearing denied January 30, 1939.

SOELKE, KOEHN & LOEWY, of Chicago, for appellants.

M. L. BLUHM and BRUCE S. PARKHILL, both of Chicago, for certain appellee; C. S. JEFFERSON, of Chicago, of counsel.

ADAMS, NELSON & WILLIAMSON, for certain other appellee; ROBERT McCORMICK ADAMS and E. DOUGLAS SCHWANTES, of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Plaintiffs, on August 19, 1937, filed a complaint which was stricken on motion of defendants. By leave of court an amended complaint was filed. Defendants again moved to strike. Their motions were granted and the suit dismissed for want of equity.

From the amended complaint it appears plaintiffs (9 in number) were at times between August 5, 1925, and October 14, 1926, employed by the defendant railroad, or its predecessor (common carriers engaged in intra- and interstate commerce), to serve as switchmen at its terminal yards in Chicago and at Benson-

ville, Illinois. Plaintiffs are skilled in such service, have devoted their lives thereto and are without other trade or calling. Continuously for years prior to and up to the time they entered upon this service there was in force and effect as to switchmen a general custom, usage and practice known as a system of seniority rights. This system became a part of plaintiffs' contracts of employment, was relied on, and established in the plaintiffs' vested property rights. The railroad maintained a "Seniority Roster" showing the names of switchmen employed and the date of employment in the order of seniority. Switchmen who had served longest were entitled to appear thereon prior to employees whose hiring was subsequent. Under this system, after lay-offs by reason of slackness of work, upon resumption of work assignments were made from this roster and employees shown to be longest in service enjoyed a prior claim to be called to resume work superior to employees of the same class who were junior in service. At the time plaintiffs entered the service they had knowledge of this system, relied on it, were thereby induced to enter the employment and upon the dates entering into service, by mutual agreement the rights and benefits accruing to them under the system became an integral part and condition of the terms of their contracts. By this system plaintiffs were assured by the employer of the right to work as switchmen until they should attain the age of retirement under the Federal Pension Laws so long as they were available, ready, willing, capable and competent, subject only to possible lay-offs. Their employer further assured plaintiffs they would not be discharged except for cause.

The amended complaint avers that as their time of service lengthened the seniority rights of plaintiffs became more valuable in that opportunities for promotion were improved, the amount of pension to which

plaintiffs would become entitled under the statutes of the United States was increased, and in consequence the seniority rights of plaintiffs became vested, valuable and continuing property rights of inestimable value.

The amended complaint specifically avers these seniority rights were not dependent upon membership in a labor union and that no working rule, express or implied, existed which required them to be or become or continue to be members of any labor organization. These seniority rights were recognized by the defendant railroad up to July 19, 1935. Plaintiffs have never quit their employment, have not been discharged or dismissed, but on that date were laid off only because of slackness of work. They have never been recalled although at all times available, ready, willing and competent, and although such work has since become available.

The amended complaint describes the seniority roster in detail, effective as of the dates of original employment, avers that the roster is in the possession of the employer and not available to plaintiffs. The amended complaint makes defendants the railroad, certain named members and officers of the Brotherhood of Railroad Trainmen, being officers and members of Majority Lodge No. 119 of the union, and avers on information and belief that because plaintiffs are not members of the Brotherhood they are subjects of its ill will and disfavor, and that these particular defendants, intending to deprive the plaintiffs of their right to work and with the intention to cause the employer to unfairly discriminate against them and in favor of members of their union who are junior to plaintiffs in point of service and in the matter of seniority rights, "by divers unfair arts, devices, threats and arguments, in divers meetings with said employer, in the absence of plaintiffs, unlawfully coerced and persuaded said

employer, and wilfully and unlawfully combined, conspired and confederated together with said employer, its officers and agents, at divers times and places, unknown to plaintiffs, but since July 19, 1935, to deprive and defraud plaintiffs of their employment contract and their seniority rights, and to totally destroy plaintiffs' right to work and to their said seniority rights, to the great pecuniary loss and injury and prejudice of the plaintiffs.''

The amended complaint avers that soon after July 19, 1935, it became expedient for the defendant railroad to employ more switchmen at the Chicago terminal; that an opportunity for such work existed and still exists there, but that pursuant to the conspiracy described and in furtherance of it, the employer has ever since July 19, 1935, failed to recall any of the plaintiffs to work although they were entitled to be called under the system of seniority rights and were and still are available, ready, able and willing, etc.; that the employer, yielding to coercion, breached its contract of employment with plaintiffs and filled the positions formerly occupied by plaintiffs with switchmen who are junior in point of service, and defendants threaten and will continue this unfair discrimination unless restrained. In furtherance of the conspiracy, after plaintiffs were last laid off, the employer published a pretended roster affecting its switchmen and falsely and unfairly omitted any mention of plaintiffs' seniority rights. This roster is in the possession of the employer and therefore cannot be further described.

There are also recited at length unavailing efforts of plaintiffs to obtain redress, stating they have exhausted all reasonable efforts at conciliation and that equitable relief is the only adequate remedy; that plaintiffs have been deprived of continuous employment since October 17, 1935, which they would have had but for this unlawful discrimination and have lost aver-

age earnings of $176.76 per month, and have been compelled to seek and subsist on relief.

The prayer is that all switchmen employed at the Chicago terminal since July 19, 1935, may be made parties; that their seniority rights may be determined and proper administration thereof provided; that the court will assume jurisdiction and construe plaintiffs' rights and agreements; that an account may be taken and a decree rendered for the amounts due to each of plaintiffs and that the writ of injunction issue against the defendant railroad commanding it to recognize the seniority standing of plaintiffs; that pending a final hearing a temporary injunction issue; that the members of the union and its officers, Hogan, Murphy and Michel, individually and as officers, may be enjoined from preventing the restoration of plaintiffs to their proper places on the roster, and that other and further relief may be granted.

In their motions to dismiss, defendants specify as reasons therefor that the alleged seniority rights are not property rights such as will be enforced by a court of equity; that the plaintiffs seek to enforce a contract for personal service which cannot be done because of want of mutuality of remedy in the parties, because plaintiffs have an adequate and complete remedy at law, and because the cause of action is predicated upon an agreement for collective bargaining between the defendant railroad company and the Brotherhood of Railroad Trainmen, which provides for a method of settling disputes, which plaintiffs did not follow prior to bringing suit.

The Civil Practice Act has modified the practice in courts of equity. Section 33 (3) (Ill. Rev. Stat. 1937, ch. 110, p. 2389 [Jones Ill. Stats. Ann. 104.033]) provides that pleadings shall be liberally construed with a view to substantial justice; section 45 (1) (Ill. Rev. Stat. 1937, p. 2395 [Jones Ill. Stats. Ann. 104.045])

that all objections to pleadings heretofore raised by demurrer shall be raised by motion, and such motions shall point out specifically the defects complained of and shall ask for such relief as the nature of the defects may make appropriate, such as the dismissal of the action or the entry of the judgment where a pleading is substantially insufficient in law, or that a pleading be made more definite and certain in a specified particular, or that designated immaterial matter may be stricken out, or that necessary parties may be added, or that designated misjoined parties be dismissed, etc.; section 45 (2), that where a pleading or division thereof is objected to by motion to dismiss, or for judgment, or to strike out the pleading because it is substantially insufficient in law, the motion must specify wherein such pleading or division thereof is insufficient; section 42 (1), that if any pleading is insufficient in substance or form the court may order a more particular statement, and if the pleading does not sufficiently define the issues the court may order other pleadings prepared; section 42 (2), that no pleading shall be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim or defense which he is called upon to meet; section 42 (3), that all defects in pleadings, either in form or substance, not objected to in the trial court shall be deemed to be waived; section 44 (1), that the court in its discretion may try legal and equitable issues together where no jury is employed, and section 44 (2) that any cause of action or counterclaim may be transferred at any time, by order of the court, from law to equity or vice versa.

The motion of the railroad to dismiss states "the plaintiffs have a clear, expeditious and adequate remedy at law." The motion of the other defendants states "the plaintiffs have an adequate remedy at law." Neither motion specifies such legal defense or defenses

available with particularity. The briefs of defendant, however, suggest that plaintiffs had an adequate remedy through suit for damages. It is apparent this would have been only a partial and not a complete remedy. Defendants suggest plaintiffs had a remedy at law through the national railroad adjustment board. The amended complaint alleges in detail demands made by plaintiffs on the defendant railroad under the "Railway Labor Act" of May 20, 1926, as amended June 21, 1934. It also avers that "on or about June 1937 plaintiffs caused to be prepared and presented in their behalf to the National Railroad Adjustment Board" created by that act, a written petition requesting the board to take jurisdiction over their grievances and adjust them, but that they were advised by the board said petition could receive no recognition and would not be docketed or heard. They also aver that they have exhausted all reasonable efforts at conciliation. Defendants suggest that the nature and form of the petition of plaintiffs to the board is not set up nor facts from which the reason or reasons of the board for refusing to receive the petition may be determined. The motions of defendants make no request that this petition should be set up nor a more specific statement made in this respect by plaintiff. The parties seem to agree that the provisions of the Railway Labor Act are not exclusive so as to oust the jurisdiction of a court of chancery. We therefore assume this to be true. We hold the averments of the complaint were prima facie sufficient under section 42 (2) of the Civil Practice Act [Ill. Rev. Stat. 1937, ch. 110, § 166; Jones Ill. Stats. Ann. 104.042], and that the suggestion of defendants cannot prevail.

The points argued to the effect that the contracts upon which plaintiffs rely are without consideration and that the allegations of fraud and conspiracy are vague and indefinite are also matters which cannot be

successfully urged since they were not specifically pointed out in defendants' motions.

The contention that the agreement set up in the amended complaint is based on a contract for collective bargaining between the railroad and the Brotherhood of Railroad Trainmen is directly contrary to the averments of the amended complaint. However, defendants have presented an amended abstract showing the original complaint which was verified and they urge that this original complaint shows that the action is in fact upon such a collective agreement between the Brotherhood and the railroad. They cite *Fowler v. Fowler,* 204 Ill. 82, to the effect that the original complaint notwithstanding the filing of the amended complaint, remains a part of the record; and *Klein v. Chicago Title & Trust Co.,* 295 Ill. App. 208, to the effect that even under the Civil Practice Act, upon a motion to dismiss a pleading will be construed most strongly against the pleader. So construed, it is urged the amended complaint is in fact based upon a collective agreement made between the Brotherhood and the railroad company and that the alleged seniority rights are not enforceable at the suit of plaintiffs. They cite *Hartley v. Brotherhood of Railway and Steamship Clerks,* 283 Mich. 201, 277 N. W. 885; *McMurray v. Brotherhood of Railroad Trainmen,* 50 F. (2d) 968; *Shaup v. Grand International Brotherhood of L. E.,* 223 Ala. 202, 135 So. 327; *Burger v. McCarthy,* 84 W. Va. 697, 100 S. E. 492; *Chambers v. Davis,* 128 Miss. 613, 91 So. 346. Section 46 (1) of the Civil Practice Act (Ill. Rev. Stat. 1937, ch. 110, p. 2396 [Jones Ill. Stats. Ann. 104.046]) provides the court may allow amendments *which will change the cause of action.* The original complaint no doubt remains a part of the record. The motions of defendants are to strike the amended complaint. These motions are equivalent to demurrers and perform the same function. In the *Fowler* case the Supreme Court

said that by demurring to an amended bill defendant "admitted all the statements therein to be true," and that by demurring defendants also waived the fact that the amendments were not verified. We hold the motions cannot prevail upon the theory that the amended complaint is inconsistent with the original. Nor would we be understood to hold plaintiffs cannot under any circumstance sue on a collective contract made for their benefit by a Brotherhood of which they are members with an employer. That question is not before us.

Defendants further suggest that even if the complaint had alleged that defendants procured the dismissal of the plaintiffs it would have stated no cause of action for the reason that the law is that a union may combine, strike or threaten to strike in order to persuade an employer to hire its members to the exclusion of others. They cite *Kemp v. Amalgamated Ass'n, Division No. 241,* 255 Ill. 213. The question there was whether a labor organization had a right to call a strike in order to compel an employer to employ union help only. That is not the issue in the case stated by the amended complaint. Whether it may prove to be an effective defense when raised by answer is a question not now before us.

The contention of defendants that equity will not enforce a contract for personal services by injunction or by decree for specific performance to the extent that it will not compel an employer to hire nor an employee to work against his will is, of course, well settled by the decisions of the courts of this and of other States. *Rath v. Degener,* 352 Ill. 135; *Preble v. Architectural Iron Workers' Union,* 260 Ill. App. 435. This doctrine is not, however, without limitations, as was pointed out by Judge Taft in *Toledo, A. A. & N. M. Ry. Co. v. Pennsylvania Co.,* 54 Fed. 730. However, the point as made here disregards the allegations of the amended complaint, to the effect that the plaintiffs have not been

discharged and that the relationships of employer and employee between the railroad and the plaintiffs were not terminated on July 19, 1935. The wrong alleged is not that of the disregard of their legal rights by a wrongful discharge but a conspiracy to disregard seniority contractual obligations of defendant railroad to plaintiffs, as established by their contracts while they remain employees. It is apparent the motions to dismiss disregard these averments of the amended complaint.

There remains the controlling question, whether seniority rights such as are set up in the amended complaint are property rights enforceable in a court of equity. This question has never been decided by the courts of review in this State. The courts of other States are not in accord on this question.

In *Gregg v. Starks,* 188 Ky. 834, the court held in the affirmative, saying the facts were so extraordinary as to require injunctive relief ''if plaintiff is to have any protection whatever in his contractual rights.'' In that case a conductor about to be displaced from a run to which he was entitled was granted an injunction although under his contract he was entitled to have another run paying the same wages.

In *Chambers v. Davis,* 128 Miss. 613, a railroad had contracted with its employees to assign trains in accordance with seniority rights, giving preferment to the employee longest in its service. Certain employees who had been displaced brought their suit in equity and obtained an injunction against the other employees who had been put in their places. On appeal the Supreme Court of Mississippi disapproved *Gregg v. Starks* and said the suit was in substance to have a contract for personal services specifically performed; that it had been urged the general rule against this would not apply because the company had not discharged plaintiffs and did not intend to do so but was willing

to accord to them their seniority rights. This, the court said, amounted to a request that the court relieve the railroad of an embarrassing situation by acting as arbitrators which was not the function of a court as the court saw it. The decree was reversed with directions to dismiss the bill. Two judges dissented, saying: "Since under modern conditions employers and employees (especially large employers of labor and their employees) are dealing with each other collectively as to many of the important terms of employment, why should not the courts deal with them in the same manner? Sooner or later it will be done. *Gregg v. Stark,* 188 Ky. 834, 224 S. W. 459, is directly in point, and I know of no authority to the contrary; and, although that was not a decision of the court of appeals of Kentucky, as stated in the majority opinion, it was concurred in by a majority of the members of the court, and is entitled to such weight as its reasoning carries."

In the later case of *Louisville & N. R. Co. v. Bryant,* 263 Ky. 578, 92 S. W. (2d) 749, the highest court of Kentucky approved the majority opinion of the Supreme Court of Mississippi, saying: "We have not overlooked the case of *Gregg v. Starks,* 188 Ky. 834, 224 S. W. 459, cited by, and which supports the contention of, the appellees, but that case is not in accord with the rule governing controversies of the character of the one here in question, and, moreover, was not decided by a court of last resort, but by one of the judges of such a court on a motion for a temporary injunction."

In other jurisdictions views seem to have been adopted in conformity with the prediction made by the dissenters in the Supreme Court of Mississippi. In *Griffin v. Chicago Union Station,* 13 Fed. Supp. 722, it appeared that Griffin held seniority rights as a switch tender but was transferred to other work, and for 10

years his name did not appear on the seniority list. At the end of the 10-year period his position was abolished and he was restored to the seniority list as a switch tender and put to work at once, displacing others. The displaced switch tenders complained to the National Railroad Adjustment Board, First Division, which noticed the employer to appear and upon the hearing entered an order depriving plaintiff of his seniority rights and restoring the displaced switchmen. Plaintiff sued the station company, the National Railroad Adjustment Board and other switch tenders affected by the order. Plaintiff had not been notified of the hearing. The district court held that the seniority rights of plaintiff which he held prior to the decision of the board were property within the meaning of the fifth amendment to the federal constitution, quoting the statement of the Supreme Court of the United States in *Truax v. Raich,* 239 U. S. 33, 6 L. Ed. 131, L. R. A. 1916D 545; Annotated Cases 1917B 283. The enforcement of the order was perpetually enjoined. The board took the case to the Circuit Court of Appeals for the 7th District, where the order was affirmed. *Nord v. Griffin,* 86 F. (2d) 481, the court holding that in depriving the plaintiff of his seniority rights without notice the board acted in violation of the fifth amendment to the constitution of the United States and deprived plaintiff of his property without due process of law.

In *Rentschler v. Missouri Pac. R. Co.,* 126 Neb. 493, 253 N. W. 694, plaintiff, member of a Brotherhood, sued at law to recover wages lost through being laid off in disregard of his seniority rights. He recovered judgment. The defense was interposed that he resorted to the courts before exhausting arbitration as provided by the contract for the adjustment of his grievances. The contract was made between the Brotherhood (of

which plaintiff was a member) and the railroad. It was claimed this contract did not vest in plaintiff a right to sue on it. The Supreme Court of Nebraska reviewed the authorities and affirmed the judgment. The case is annotated in 95 A. L. R. 10, and other cases construing contracts of this nature are there collected and analyzed. While the particular case was an action at law, these collected cases show that contracts of this nature have been construed by many courts as vesting in the employee property rights which will be protected at law and also in equity in conformity with equitable principles. Where the contract is entered into by the union in behalf of the employee and the controversy concerns some internal rule of the union (as the cases cited by defendants indicate) the action usually should be brought in the name of the union alone. As we have pointed out, the amended pleading eliminates questions of this character. We hold that seniority rights such as are set up in the amended complaint are property rights, and that the complaint states facts sufficient to give jurisdiction to a court of equity and to require an answer. The decree will be reversed and the cause remanded with directions for a rule on defendants to answer.

*Reversed and remanded with directions.*

McSurely, P. J., and O'Connor, J., concur.