Lawrence J. Long, Plaintiff-Appellant, v. Illinois Central Railroad Company, a Corporation, Defendant-Appellee.

Gen. No. 10,337.

Third District.

September 6, 1961.

Appleman, Zimmerly & McKnelly, of Urbana, Dwight H. Doss, of Monticello and Jo B. Gardner, of Missouri, for appellant.

Enos L. Phillips, Darius E. Phebus, of Urbana, Joseph H. Wright, Herbert J. Deany of Chicago and Barth, Phillips, Phebus & Tummelson of Urbana (of counsel) for appellee.

REYNOLDS, J.

Plaintiff claims wrongful discharge. Defendant contends plaintiff was not discharged, still holds seniority as a fireman and locomotive engineer, but is disqualified for service because of a defect in color perception. Plaintiff had worked for the defendant railroad company for about 25 years and from time to time had passed physical examinations as required by the company. In February 1954, he was given a test for color perception and failed to pass. He was re-examined in April 1954 and again failed to pass. On May 7, 1954, the railroad company notified plaintiff he was disqualified for further service as a fireman or locomotive engineer. The plaintiff took the matter up with

his union, the Brotherhood of Locomotive Engineers and was advised by officials of the union he should take a field test. Plaintiff failed or refused to take the field test, but wrote a letter to the superintendent of the railroad company at Clinton, Illinois, ·admitting the defect in color perception but claiming it was minor and he could properly perform the duties of a fireman. This request was refused by the company. Whether before or after, the time not being clear, the plaintiff then applied for and began receiving his railroad retirement pay. Some time in 1958, plaintiff brought the present suit.

No testimony was taken and the issues are presented by the pleadings, affidavits and exhibits. While there are many side issues, it would seem the vital issues in this cause can be reduced to these questions. 1. Was there a wrongful discharge? 2. Assuming there was a wrongful discharge, is the plaintiff compelled to exhaust his administrative remedies before bringing suit? Determination of those questions will dispose of the many collateral and side issues of the cause.

■■ The first question of wrongful discharge, must depend upon the questions of discrimination, the method of examination, the failure of the plaintiff to take the field test, his election to take his retirement, and the fairness of the field test. In considering these questions, it must be recognized that an employer, even though under the Railway Labor Act, owes no duty to an employee to keep him employed, except by contract. There is no common law right of the employee to employment by the railroad, but a contractual right, established by the contract between the railroad and the unions, and the employee has no right of action, except for a breach of that contract. Here, both the employee and the railroad were bound by the terms of that contract. Article 39 of the Firemen con-

tract provides for the handling of grievances. The procedure is outlined in detail. Article 50 of the Engineer contract outlines the procedure for hearing of charges against an engineer. There is nothing in the record to·show that any of the provisions of either of these articles were used by either the employer or the employee. The railroad contends that the plaintiff was disqualified for service because of his color perception defect, that he has not been discharged, and that he still retains his seniority rights. This distinction is important here, since there were no charges preferred against plaintiff at any time, there was no hearing or request for hearing, and no reported grievance to be adjudicated. Plaintiff, in his letter to the superintendent of the railroad company, at Clinton, Illinois, under date of August 9, 1954, apparently recognized that his remedy was by way of his union, and by appeal from the order of the railroad disqualifying him for service as a fireman or engineer. However, he did not appeal. He bases his refusal to take the field test upon the ground that such a test is unfair. This field test is provided for in Circular No. 18 of the railroad company adopted January 1, 1928, and in force in 1954, which provides that should the examination of the employee disclose a defective color perception, making necessary the employee's withdrawal from the service engaged in, the employee should be notified. If not satisfied with the examination the employee may appeal to the superintendent in writing, for a field test. 100% perfect is necessary to satisfactorily pass a field test. The field tests are to be conducted by the superintendent or his representative, the company surgeon or his representative, and at the field test any person in service of the company selected by the employee may be present. This rule of the company as to field tests has been in effect for many years and while requiring a rigid 100%

grade, this fact alone or that the person selected by the employee must be an employee of the company, does not, make the test unfair. The rule itself may be too rigid, or require too much, but it has apparently been recognized and accepted by the unions, for a long time. Since the correct reading of color signals is highly important to anyone connected with railways, it would seem that both the unions representing the engineers and firemen, and the railroad recognize the importance of good color perception and the employer has the right to insist upon its employees possessing good or near perfect color perception.

Plaintiff contends that he had passed many times, the Holmgren Worsted test which is by colored skeins of yarn. He contends that the giving of the other tests, the pseudo-isochromatic plate test, the Ishihara plate test, the Hardy Rand Rittler plate test and the Williams lanterns test, constituted a new and different type of test and as such was a change of the rules and constituted a wrongful discharge. Yet the record shows that plaintiff was given the Holmgren yarn test along with the other test. Plaintiff missed 10 of the 18 test plates of the pseudo-isochromatic test, all of 12 Ishihara test plates, 11 of 14 Hardy Rand Rittler test plates, 9 of 68 lights in the Williams lantern test, and 7 out of 20 of the Holmgren Worsted yarns. If plaintiff had been given only the Holmgren yarns test he still would have failed.

Plaintiff put into the record defects of color perception of other engineers and firemen in support of his claim of discrimination. The nature and extent of the defects in color perception of these men is not shown and this court cannot say whether the same extent of defect of color perception existed with them as was shown to exist in the plaintiff. Apparently the railroad company officials and surgeons believed these men could continue to work and upon re-examination

or recommendation of the superintendent they were permitted to work. Nevertheless, their working or not working does not change the fact that by the tests given him, plaintiff failed and was disqualified for service because of a color perception defect, sufficiently defective that the railroad surgeons and officials determined he could no longer perform the duties of fireman or engineer.

█ On the basis of this record, it seems evident that the plaintiff was not wrongfully discharged but was disqualified in accordance with company rules.

Even if the question of wrongful discharge was inconclusive, or the plaintiff was wrongfully discharged, the question whether he should have exhausted his administrative remedies before instituting the present suit remains to be determined. As we have said, there was no grievance presented, either to the union or to the Railroad Adjustment Board. The plaintiff asked for reconsideration of his disqualification, which was denied, refused to take a field test, took his pension and later entered suit.

█ Plaintiff relies upon Moore v. Illinois Cent. R. Co., 312 US 630, in support of his contention that he need not exhaust his administrative remedies before bringing suit. That case held that there was nothing in the Railway Labor Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge, or to make an administrative finding a prerequisite to filing a suit in court. That case further held that a plaintiff was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for a wrongful discharge. The Moore case originated in the State of Mississippi. The case of Slocum v. Delaware L. & W. R. Co., 339 US 239, sustains the Moore v. Illinois Cent. R. Co. case, and holds that the Railway Labor Act does not

bar courts from adjudicating wrongful discharge cases. However, in other cases, the doctrine of the Moore v. Ill. Cent. R. Co. case has been distinguished to apply only if the state of origin does not require the exhaustion of administrative remedies as a prerequisite to suit. The case of Transcontinental and Western Air, Inc. v. Koppal, 345 US 653, says that an employee is not precluded by Railway Labor Act from resorting to a state recognized cause of action for wrongful discharge, but that, in such action he must show exhaustion of his administrative remedies under his contract, provided the applicable state law so requires. This is true, even though employer is carrier subject to the Railway Labor Act. The employee in that case was charged with abuse of his sick-leave privileges. A hearing was had on the charges and the employee attended the hearing, and upon the hearing officer ordering him to be discharged, he resigned "under protest." He took no appeal, but brought suit, and the court held he must first exhaust his administrative remedies.

██ The case of Anson v. Hiram Walker & Sons, 222 F2d 100, takes note of the doctrine of the Moore case, but says:—"Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the Moore litigation, supra, under Mississippi law. On the other hand, if the applicable local law, as in Missouri, requires an employee to exhaust his administrative remedies under his employment contract in order to sustain his cause of action, he must show that he has done so." (Citing Transcontinental & Western Air, Inc. v. Koppal, 345 US 653.) And the court, continuing, said: "In Illinois it is well settled that where a member of a union or other association, brings suit and it appears that his remedies are governed by laws and regulations of the

109

association to which he belongs, he must, before he can succeed, show that he has exhausted all of the remedies provided by those laws and regulations."

There are a number of Illinois cases that state the rule in Illinois, but two recent cases have re-affirmed the rule as stated by Judge Lindley in the Anson v. Hiram Walker & Sons case. Payne v. Pullman Co. 13 Ill App2d 105, 141 NE2d 83; McManaman v. Elgin, J. & E. Ry. Co. 25 Ill App2d 449, 167 NE2d 448.

The recent case of Hundley v. Ill. Cent. R. Co., 272 F2d 752, involved a suit for wrongful discharge, amended to wrongful removal from service. The plaintiff was a telephone operator on the switchboard of the railroad at Fulton, Kentucky. By reason of technological improvements the switchboard at Fulton was discontinued. Plaintiff, with others, was furloughed but offered a position at other points of the railroad company, one nearby, at Paducah, Kentucky. Some of the other telephone operators took positions elsewhere, but plaintiff refused. However, she retained her pass on the railroad and carried her group insurance as a furloughed railroad employee. She was a member of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees. The court held that under the collective bargaining or working agreement between the union and the railroad, the matter must be handled by negotiations and ultimately, in the process of adjustment, by the National Railway Adjustment Board, in accordance with the provisions of the Railway Labor Act. The suit was dismissed.

Here, the plaintiff was not discharged, but disqualified for service. Other than reporting his disqualification to his union, and requesting to be reinstated, he did nothing further to pursue his remedies under the administrative provisions of the contract between his union and the railroad company.

 In view of the law in Illinois, as recognized by the Federal courts, it is clear that the plaintiff, must be barred from pursuing his remedy in any court until he has exhausted his remedy under the remedies supplied by the Railway Labor Act and the collective bargaining contracts made in pursuance thereof. The judgment will be affirmed.

Affirmed.

ROETH, P. J. and CARROLL, J., concur.