Lester Webster, et al., Plaintiffs-Appellants, v. Midland Electric Coal Corporation, a Corporation, Martha Terleke, Acting Secretary of the Illinois Coal Operators Association, Thomas Kennedy as President of the International Union United Mine Workers of America, John Owens as Secretary-Treasurer of the International Union United Mine Workers of America, Hugh White as President of District 12 United Mine Workers of America, William Sears as President of Local Union 1904 United Mine Workers of America, and Thomas Nowers as Secretary of Local Union 1904, United Mine Workers of America, Defendants-Appellees.

Gen. No. 11,713.

Second District, Second Division.

October 14, 1963.

Kevin D. Kelly, of LaSalle, and Robert Plotkin, of Chicago, for appellants.

Reynolds M. Everett, of Galva, Essington, McKibbin, Beebe & Pratt, of Chicago (Hamilton K. Beebe, Essington, McKibbin, Beebe & Pratt, of Chicago, of counsel), William J. Voelker, Jr., of Peoria, Edmund Burke, of

Springfield, Willard P. Owens, of Washington, D. C., and Willis R. Tribler, of Peoria, for appellees.

SPIVEY, J.

Plaintiffs' appeal from an order of the Circuit Court of Henry County dismissing their suit for declaratory judgment and incidental relief for damages.

Plaintiffs are twelve employees of Midland Electric Coal Corporation, hereinafter referred to as Midland; and members of The International Union United Mine Workers of America, hereinafter referred to as International Union; District 12 United Mine Workers of America, hereinafter referred to as District 12; and Local Union 1904 United Mine Workers of America, hereinafter referred to as Local 1904.

The original complaint was filed as an action at law for damages against Midland and its superintendent for allegedly discharging plaintiffs in violation of a local seniority agreement and against certain union defendants for allegedly influencing, inducing or causing Midland to breach said agreement. After motions to quash summons and to dismiss the complaint had been filed, but before any hearing thereon, plaintiffs filed an amended complaint in chancery. This amended complaint was further amended on February 15, 1961, and as amended, charged that Midland had discharged plaintiffs in violation of said local agreement and the National Bituminous Coal Wage Agreement and asked that Midland account to them for wages and monetary benefits lost, for further damages, including punitive damages and for equitable relief including the reinstatement of plaintiffs in their former positions. The plaintiffs further charged that the union defendants refused to take the necessary steps to redress plaintiffs' grievances and asked that they be required to take such steps, desist from an alleged violation of the National Bituminous Coal Wage Agreement and to pay damages, including punitive damages.

Defendants' motions to dismiss the amended complaint were sustained. Plaintiffs then filed the aforesaid declaratory judgment action as their second amended complaint which was designated as a class action with respect to the Union defendants.

The second amended complaint after all amendments thereto, charged Midland with an unlawful violation of the seniority provisions of a written collective bargaining agreement known as the National Bituminous Coal Wage Agreement, dated March 5, 1950, as amended, hereinafter referred to as National Agreement.

This complaint further charged the International Union, District 12 and Local 1904 all of which are unincorporated associations, with failure to process their grievances, which failure, they allege to be in violation of their obligations under the National Agreement and the constitution of the United Mine Workers of America, hereinafter referred to as the Constitution.

This complaint in additional counts charged the same defendants with wilfully, wantonly, maliciously and arbitrarily doing the same acts or omissions and prayed for the imposition of punitive or exemplary damages.

The second amended complaint, in addition to other matters, alleged that prior to the commencement of this action they had performed all of the necessary conditions precedent under the terms of the National Agreement and the Constitution, "which were not illusory and futile."

Plaintiffs in their brief and argument with reference to their exhaustion of the remedies required by the National Agreement and the Constitution state that the second amended complaint together with supporting affidavits show that a few days before their layoff, plaintiff Fairbanks had a conversation with James MacAffee, Superintendent of Midland, relative to the

362

pending layoff of some of the older men with greater seniority, contrary to the provisions of a superseded local agreement at which time MacAffee told Fairbanks that Midland could no longer operate profitably under the old local agreement. On or about February 12, 1960, Fairbanks was accosted by MacAffee and told that he and some of the older men were being laid off, whereupon Fairbanks protested, and pointed out that such contemplated layoff was contrary to the contract. Plaintiffs were laid off for the reasons of slowdown in production and lack of work on or about February 25, 1960. It is further stated that plaintiffs Moon and Williams, when advised of their layoff, complained to MacAffee of a violation of the seniority provisions of their employment and MacAffee told them that the action of the company was final and that their layoff was in accordance with the contract.

Certain of the plaintiffs then asked William Sears, president of Local 1904, to enforce their seniority rights and were told by Sears to go back and see MacAffee. MacAffee is said to have again told them there was nothing that could be done about their layoff. A few days later at a regular meeting of Local 1904 attended by some of the plaintiffs on behalf of themselves and the other plaintiffs, the question of their layoff was brought to the floor of the meeting and a request made of Thomas Nowers and William Sears, officers of the Local Union to process their claimed contract violation through regular grievance channels. Sears and Nowers told them Midland was following the National Agreement, action would be useless, and that they would not process their complaint.

Continuing it is said that about a week later, at plaintiffs' request, a meeting of the Joint Grievance Committee was held at the mine office of Midland and that Moon and Williams attended along with Herman

363

Lisse, District 12 Grievance Committee Member, Henry Nowers, Management Representative for the Mine, James MacAffee, Superintendent of the Mine, and Bill Duryea, James Mohler and Vern Mineart, representing labor. Moon and Williams protested the violation of the seniority provisions of the contract and asked the Joint Grievance Committee to set up a case on their complaint, and they were advised they did not have a case and that they would not write up a complaint or take any action to process their claim.

Lastly it is said that in May of 1960 a District 12 meeting was held to consider an appeal from the failure of action on the part of Local 1904 and the Joint Grievance Committee. Attending were Herman Lisse and Joseph Shannon, District 12 Executive Board Members, Lisse also being a member of District 12 Grievance Board and Shannon also being a member of the Grievance Board of the International Union, and, plaintiffs Brutsche, Williams, Moon, and Fairbanks on their behalf and on behalf of the other plaintiffs. Plaintiffs' grievances were brought to the floor of the meeting and a request made of the presiding officer to process their complaint. Following deliberation by the District 12 Executive Board they were informed that nothing could be done, and thereafter Shannon was requested to take action which he refused to do.

Midland moved to dismiss the second amended complaint and among other things alleged that the court lacked jurisdiction in that the plaintiffs had not exhausted their administrative remedies provided in the collective bargaining agreement.

The International Union, District 12, and Local 1904 moved to dismiss the second amended complaint and stated, inter alia, that plaintiffs had failed to exhaust the provisions for adjustment and settlement of grievances provided by its Constitution, and that plaintiffs

had failed to exhaust or invoke the grievance procedures provided in the National Agreement.

Defendants' motions were supported by affidavits, the pertinent parts to our decision are that the records of the secretary-treasurer of District 12 disclose that none of the plaintiffs have ever filed or made any complaint, grievance or charge against the International Union, District 12, or Local 1904 as authorized by the Constitution, nor have they ever made or filed with the National Labor Relations Board, nor with any agent or agency thereof, any such complaint, grievance or charge. The books and records of Midland disclose that each of the plaintiffs was laid off because of a reduction in the working force except Leonard Johnson who is not and has never been employed by Midland at the mine, and no complaint, grievance or charge has been filed with Midland by or on behalf of the Plaintiffs and no effort has been made by any of the plaintiffs under the grievance procedure outlined in the collective bargaining agreement.

In addition the affidavits set forth certain provisions of the National Agreement, the Constitution and other relevant matters.

Provisions of the Constitution of the United Mine Workers of America germane to this decision provide:

"Article III.

"Section 1. . . . The International Union shall have supreme legislative, executive and judicial authority over all members and subordinate branches, and shall be the ultimate tribunal to which all matters of importance to the welfare of the membership and subordinate branches shall be referred for adjustment. . . .

"Sec 3. In all questions of dispute, appeals and grievances (unless restricted by joint agreement) the

365

right of appeal of an individual member shall end with the District Executive Board, and the right of appeal of any branch of the Organization shall end with the International Executive Board. This shall not prevent individuals whose membership is at stake from appealing to the International Executive Board, which body's decision shall be final and binding unless reversed by the International Convention. When an appeal is taken, the defendants must be furnished a copy of the appeal in ample time to prepare their case. In all cases the decision of the subordinate tribunal must be complied with before the appellant's right of appeal shall be recognized. However, the appellant shall have the right of appeal provided bond satisfactory to the court of appeal covering the amount of money involved is furnished."

"Article XVIII

"Section 1. When an officer of the Organization other than local is charged with official delinquency or malfeasance, other than as to the particular offenses described in Section 7 of this Article, the charge must be lodged with the Executive Board of the branch of which he is an officer and the decision of said Executive Board shall close the case insofar as such tribunal is concerned, but should the accused or his accuser be dissatisfied with the decision of the tribunal first trying the case, either shall have the right of appeal to the next highest tribunal in authority and so on until a final decision is reached, as provided in Section 3 of Article III.

"Section 2. When any Local officer or any member not an officer is accused of violating any of the Organization's laws or any transgression against the Organization or any of its officers or members, other than as to the particular offenses described in Section

7 of this Article, the charge must be first lodged with and prosecuted before the Local Union of which the alleged offender is a member and the decision of the Local Union shall close the case so far as that tribunal is concerned, but should the accused or his accuser be dissatisfied with the decision of the tribunal first trying the case, either shall have the right of appeal to the next highest tribunal in authority and so on until a final decision is reached, as provided in Section 3 of Article III, except as otherwise provided in this Constitution.

## "Article XXI

"Sec 9. Any member of the Organization who resorts to the civil courts to secure redress of an alleged wrong done him by the Organization before exhausting his rights in the courts of the United Mine Workers of America, shall be expelled from the Organization and shall not be reinstated until the suit entered in the civil courts is withdrawn.

"Pertinent provisions of the National Agreement provide:

## "Miscellaneous.

"3. The United Mine Workers of America and the Operators agree and affirm that they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the 'Settlement of Local and District Disputes' section of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through

the machinery in this contract provided and by collective bargaining without recourse to the courts.

## "Seniority.

"Grievances under the seniority arrangements shall be handled in the usual way under the machinery of the contract providing for the consideration and disposition of grievances."

"Settlement of Local and District Disputes.

"Should differences arise between the Mine Workers and the Operators as to the meaning and application of the provisions of this Agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences immediately:

"1. Between the aggrieved party and the mine management.

"2. Through the management of the mine and the Mine Committee.

"3. Through District representatives of the United Mine Workers of America and a commissioner representative (where employed) of the coal company.

"4. By a board consisting of four members, two of whom shall be designated by the Mine Workers and two by the Operators.

"5. Should the board fail to agree the matter shall, within thirty (30) days after decision by the board, be referred to an umpire to be mutually agreed upon by the Operator or Operators affected and by the duly designated representatives of the United Mine Workers of America, and the umpire so agreed upon shall expeditiously and without delay decide said case. The decision of the umpire shall be final. Expenses and salary incident to the services of an umpire shall be

paid equally by the Operator or Operators affected and by the Mine Workers.

"A decision reached at any stage of the proceedings above outlined shall be binding on both parties hereto and shall not be subject to reopening by any other party or branch of either association except by mutual agreement."

Defendants' motions to dismiss presents the question of whether or not on the basis of the allegations a proper case is presented or made out for invoking the jurisdiction of the court to make a declaratory judgment. Stated another way, does it appear that plaintiffs would be entitled to any relief if they should prove all of the facts alleged in their complaint.

■ Plaintiffs are members of a voluntary unincorporated association and as such are bound by the constitution, laws, rules and regulations duly adopted by the association. (Gratz v. Cozart, 13 Ill App2d 515, 142 NE2d 833; Ginossi v. Samatos, 3 Ill App2d 514, 123 NE2d 104; Talton v. Behncke, 199 F2d 471.)

■ Their cause of action is bottomed on the National Agreement wherein the defendant unions are designated as their exclusive bargaining agent. The collective bargaining agreement negotiated on behalf of plaintiffs govern their employment and they are bound by the terms of that agreement. (Anson v. Hiram Walker Co., 222 F2d 100.)

■ While there is authority to the contrary in other jurisdictions Illinois has consistently held to the rule that before a member of a union or association brings suit and it appears that his remedies are governed by laws or regulations he must first show that he has exhausted all of the remedies provided. This rule applies to procedures outlined in the collective bargaining agreement as well as under the constitution and bylaws of the union or association.

369

(Payne v. Pullman Co., 13 Ill App2d 105, 141 NE2d 83; Long v. Illinois Central Railroad Co., 32 Ill App2d 103, 176 NE2d 812; Henderson v. Eastern Gas and Fuel Association, 290 F2d 677; Anson v. Hiram Walker & Sons, 222 F2d 100.)

As we have noted plaintiffs' action is predicated solely on the National Agreement, and the Constitution of the United Mine Workers of America. It is readily apparent from an examination of the record as a whole that they have failed to exhaust their remedies under both the National Agreement and the Constitution of the United Mine Workers of America.

Obviously recognizing their shortcomings in that regard they have attempted to excuse themselves by alleging that any further pursuit of their administrative remedies would be illusory and futile.

In the instant case Midland, International Union, District 12 and Local 1904 all took the position that plaintiffs' layoffs were consistent with the existing seniority regulations under the National Agreement.

The record is absent any showing that Midland had refused to participate or indicated that they would refuse to participate in any of the procedures provided for the settlement of local and district disputes under the National Agreement. The fact that Midland participated in a meeting of the Joint Grievance Committee is inconsistent with any argument that Midland would not follow the full grievance procedure.

Midland at all times was under the duty to negotiate with the Union as the exclusive representative of plaintiffs. Any deviation from that duty would constitute a violation of the National Labor Relations Act. (National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 US 1; Plasti-Line Inc. v. National Labor Relations Board, 278 F2d 482; Medo Photo Supply Corp. v. National Labor Relations Board, 321 US 678.)

370

■ Plaintiffs' only complaint against the union defendants is that they have refused to process their complaints against Midland. This the union may ordinarily do. (Ostrophy v. United Steelworkers of America, 171 F Supp 782.) Considering the vast number of members of this Union, wide discretion must necessarily be placed in the union agents so that as a whole the membership may be best served. (Ford Motor Co. v. Huffman, 345 US 330.)

Briefly summed up it may be said that plaintiffs' efforts insofar as they went were informal and ineffective. The defendants are entitled to the benefits of some formality provided by the National Agreement and the Constitution. Anything less than that would result in an impossible situation in the processing of individual members' complaints.

Plaintiffs rely on Ledford v. Chicago, M. & St. P. Ry. Co., 298 Ill App 298, 18 NE2d 568, and United Protective Workers of America v. Ford Motor Co., 194 F2d 997, and 223 F2d 49, in support of their contention that exhaustion of their administrative remedies is unnecessary if the same would be illusory and futile. Neither of these cases are controlling. In the Ledford case the plaintiffs' action was not based upon an employment contract nor membership in a union. They were not in fact members of the union, consequently they were not bound by a contract of employment nor the constitution of a union.

In the Ford case the defendant took the position that the dismissals had no connection with the collective bargaining agreement but were pursuant to a general retirement plan. Ford had refused the unions request, as bargaining representative, to follow the grievance procedure outlined in the collective bargaining agreement contending that it was not in issue.

In addition, with reference to the union defendants, very recent expressions of the Supreme Court of the

371

United States hold that the National Labor Relations Board's jurisdiction in matters involving *individual members employment,* pre-empts court jurisdiction. (United Ass'n of Journeymen and Apprentices v. Borden, 373 US 690 and International Ass'n of Bridge, Structural & Ornamental Iron Workers Union v. Perko, 363 US 701.)

In the Borden v. Perko cases the Supreme Court points out their distinction from the case of International Ass'n of Machinists v. Gonzales, 356 US 617. The court said that the Gonzales case applies to strictly internal affairs of a union not involving employment.

Plaintiffs contend that the trial court erred in continuing the taking of depositions until after hearing on motions to dismiss the second amended complaint. The order of continuance was entered on January 12, 1962, and noted the presence of counsel for the respective parties.

Supreme Court Rule 19–5(2) affords the court wide discretion in controlling and directing discovery procedures. (Stowers v. Carp, 29 Ill App2d 52, 172 NE2d 370.) The second amended complaint having been properly dismissed there could be no error in continuing the taking of the depositions. (Kimball v. Ryan, 283 Ill App 456.)

In view of what has been said herein it is unnecessary to consider other points raised by the parties.

The orders of the Circuit Court of Henry County are affirmed.

Affirmed.

CROW, P. J. and WRIGHT, J., concur.